IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **Christopher Dankovich,** | Case:2:16-cv-13395 |
| Plaintiff, | Judge: Michelson, Laurie J. |
| | MJ: Grand, David R. |
| **v.** | Filed: 09-20-2016 At 09:13 AM |
| | CMP DANKOVICH V. KELLER (DA) |
| **Bill Keller**, Editor-in-Chief; | |
| **Eli Hager**, Editor; | |
| **The Marshall Project** | Defendants |
| **John Doe**, Editor-in-Chief; | |
| **VICE News** | |

_____/

## I. COMPLAINT

1. Plaintiff, pro se, for his Complaint, states as follows:

## II. PARTIES, JURISDICTION, AND VENUE

2. **Plaintiff Christopher Dankovich** is a writer who is an inmate at Thumb Correctional Facility, located at 3225 John Conley Drive, in the City of Lapeer in the State of Michigan. He remains confined at this location.

3. Plaintiff Christopher Dankovich is, and was at all times mentioned herein, an adult citizen of the United States and a resident of the state of Michigan.

4. **Defendant Bill Keller** is and was at all relevant times the Editor-in-Chief of The Marshall Project, located at the address 156 W. 56th Street, Suite 701, New York, New York 10019.

5. **Defendant Eli Hager** is and was at all relevant times herein an editor and acting representative of The Marshall Project, located at the address 156 W. 56th Street, Suite 701, New York, New York 10019.

-1-

6. **Defendant The Marshall Project** is and was at all relevant times herein a media company, corporation, or organization in the State of New York, located at the address: 156 W. 56th Street, Suite 701; New York, NY 10019.

7. **Defendant John Doe** is and was at all relevant times herein the Editor-in-Chief of VICE News, located at the address: 90 North 11th Street; Brooklyn, NY 11211.

8. **Defendant VICE News** is and was at all relevant times herein a media company or corporation in the State of New York, located at the address: 90 North 11th Street; Brooklyn, NY 11211.

9. This action arises under, and is brought pursuant to, 17 USCS §501 to remedy the infringement of copyright guaranteed by 17 USCS §204(a), and under and pursuant to THE LANTHAM ACT, 15 USCS §1125, to remedy the attribution of false/misleading representations of fact and fraudulent statements attributed to Plaintiff by Defendants.

10. Plaintiff's claims for injunctive relief are authorized by 17 USCS §502(a), 15 USCS §1125(c)(1), and Rule 65(a) of the Federal Rules of Civil Procedure.

11. Venue properly lies in this District pursuant to 28 USCS §1391(b)(2) because a substantial amount of the events giving rise to this cause of action occurred in, and the intellectual property that is the subject of this action is rightfully situated in, Lapeer, Michigan, which is located in the Eastern District of Michigan.

### III. PREVIOUS LAWSUITS BY PLAINTIFF

12. Plaintiff has never filed, or been involved in, any other lawsuits in his entire life.

## IV. STATEMENT OF FACTS

13. In January 2016, Plaintiff and Defendant Eli Hager began exchanging electronic messages (emails) through the inmate email system "JPay". Discussions focused around possible interest by Defendant Hager and Defendant The Marshall Project in publishing, in collaboration with Defendant VICE News, writing(s) by Plaintiff on the websites of Defendant The Marshall Project and VICE News.

14. The JPay email system assigns a unique CustomerID number to each outside user, assigns every electronic letter an unique identification number, and time-stamps every electronic letter. All messages are archived, and at least on Plaintiff's end, outgoing messages are archived WITHOUT the ability to be deleted. **All electronic communications sent by Plaintiff to Defendants are included with this Complaint in the included Exhibit C.**

15. On March 7, 2016, Plaintiff emailed Defendant Hager about "another piece [THE RIVING] that I've already written but never published that is relatively on that subject, about going through solitary confinement while young and the immediate institutionalizing effects that it can have." [See Exhibit C, pg. C-1)

16. On March 21, 2016, immediately before mailing out his essay "THE RIVING", Plaintiff emailed Defendant Hager to clarify what he was sending, the piece in question called, "THE RIVING", "which is on a similar note about how quickly solitary confinement can institutionalize and mess with the mind of an adolescent." [See Exhibit C, pg. C-2]

17. On April 14, 2016, an email from Defendant Hager to Plaintiff acknowledged receipt of the manuscript THE RIVING. As editor, Defendant Hager requested that Plaintiff provide him with alterations to the piece, specifically "a stronger opening", and,

"a little bit more specifically about YOU, your story, your childhood." Regarding final acceptance, he says, "Just like last time, my higher-up editor will have the final say, so I don't want to make any promises. But I definitely CAN promise that if you keep working on these pieces and future submissions, you will definitely be published here." [See Exhibit C, pg. C-4]

18. On April 17, 2016, Plaintiff emailed Defendant Hager, regarding changes/additions which Plaintiff had made in response to Defendant Hager's requests. Plaintiff included specific facts in these additions, facts which have either been proven and documented or at least have been claimed for years and written about previously by Plaintiff regarding his personal history, criminal history, and events leading up to his incarceration. These facts include the specific facts include the nature of Plaintiff's criminal pleading made by Plaintiff at the age of 16 years old, the specific date of when Plaintiff was admitted to the hospital for injuries occurring when Plaintiff was severely beaten by his own mother, and the fact that Plaintiff lived for 15½ years in a house with someone (his own parent) who had once attempted to molest him. Plaintiff considers these facts, if included in the story, to be essential to understanding the nature of Plaintiff's mental state at the time of his pleadings and sentencing, which this story is focused on. [See Exhibit C, pg. C-5]

19. On May 4, 2016, Plaintiff received an email from Defendant Hager detailing editorial rewritings performed on THE RIVING by unknown others employed by Defendant The Marshall Project, for Plaintiff to review. This edited version, THE RIVING "Version 2" still maintained the headline/title THE RIVING, and, though in somewhat different wording, included the facts about Plaintiff's history. Defendant Hager's email also stated that this version was the "final edit", and that THE RIVING had been moved to the head of Defendant The Marshall Project's "queue" for potential publication. [See Exhibit D for affidavit regarding this communication]

20. On that same day, Plaintiff responded to Defendant Hager's email, informing him that the changes made to THE RIVING to create THE RIVING Version 2 contained in Defendant Hager's email were "perfectly fine, and I'm just glad that it kept the main feeling and sense of the story." Absolutely no written and signed permission was given by Plaintiff to any of the Defendants to use his writing. [See Exhibit C, pg. C-8]

21. On or around May 19, 2016, a written document entitled "I'm Losing My Mind After Refusing to Plead Insanity for Murdering My Mom" was published on Defendant The Marshall Project's website, in collaboration with Defendant VICE News. This writing contained SOME elements of Plaintiff's essay THE RIVING, along with elements of the edited Version 2 of Plaintiff's essay THE RIVING (which were the last changes/alterations approved by Plaintiff). It also contained a significant amount of changes and writing not written by, or approved by, Plaintiff. While "I'm Losing My Mind After Refusing to Plead Insanity for Murdering My Mom" was attributed to Plaintiff, and presented as a direct quotation of Plaintiff, it differed substantially from what he had written himself or approved for editing in his piece, THE RIVING. Plaintiff did not give Defendants The Marshall Project or VICE News any form of permission to publish "I'm Losing My Mind [...]" or use any of Plaintiff's written material in the piece. Neither did Plaintiff ever imply permission to use his copyright-protected material in any way other than what he had expressly written in, and titled, THE RIVING. [See Exhibit B]

22. Defendants made absolutely no attempt between May 4, 2016 and May 30, 2016 to contact Plaintiff in any manner, despite regular communication before that date, to seek Plaintiff's permission to publish ANY material copyrighted by Plaintiff, to alter/edit any material previously submitted by Plaintiff, nor to inform Plaintiff that work attributed to Plaintiff had been published on Defendant The Marshall Project and VICE News websites. Plaintiff's father, along with other friends of Plaintiff, learned

nor is it what I approved, though it is being presented as such. It needs to either be removed from your, and all connecting, sites, or changed to what was agreed to [...]." [See Exhibit C, pg. C-9]

25. On May 31, 2016, Defendant Eli Hager responded to Plaintiff's previous email, admitting that changes were made from Plaintiff's original copyrighted work THE RIVING and Version 2 of THE RIVING, and acknowledged that the words, "I'm Losing My Mind After Refusing To Plead Insanity for Murdering My Mom" were not written by Plaintiff. [See Exhibit C, pg. C-10]

26. Plaintiff immediately responded to Defendant Hager's email within the same day. Plaintiff reiterated, "I wouldn't have written for you, or at least have allowed you to publish, this piece if I would have known that headline was going to be used." [See Exhibit C, pg. C-11]

27. On June 1, 2016, Defendant Hager emailed Plaintiff. In the email, Defendant Hager acknowledges that certain aspects and details added to the piece by Defendants, "[...] (especially the sensational details) about the murder are not relevant to the content of what you're writing about." And later goes on to say: "[...] it does seem harmful to include the sensationalist stuff after the fact." [See Exhibit C, pg. C-12]

28. On June 26, 2016, Plaintiff contacted Defendant Hager again via JPay to: "[...] ask you and insist that this article be taken down from both The Marshall Project and from all collaborating or affiliated sites." Plaintiff goes on to reiterate, "The changes your organization made to my piece without my consent, in particular the title which is presented as if it were my words, is a danger to my future, my freedom, and to getting support that is necessary to secure those." [See Exhibit C, pg. C-14]

29. On June 27, 2016, Defendant Hager responded to Plaintiff's email. Defendant Hager stated: "We can definitely work on changing

the headline [...]"; and later that: "We will definitely change the headline [...]".

Defendant Hager here again admits: "Again, I can completely understand your frustration with the headline and can see how that might be damaging your prospect in court." [See <u>Exhibit C</u>, pg. C-15]

30. On July 12, 2016, Defendant Hager emailed Plaintiff, communicating: "[...] my editors informed me that they will not be changing the headline [...]", and, "However, again, unfortunately The Marshall Project is unable to change a headline or bio, or take a piece down entirely." In this same email, Defendant Hager states, "I take personal responsibility for not making it clear to you that the headline would be whatever the editors decided they wanted it to be [...]. Perhaps if I had made those things more clear to you, we could have avoided this." [See <u>Exhibit C</u>, pg. C-19]

31. On July 17, 2016, Plaintiff sent a "Cease and Desist" letter through United States Postal Service to Defendant The Marshall Project. In this letter, Plaintiff informed Defendant The Marshall Project that they were in violation of <u>17 USCS §204(a)</u> copyright law, along with explaining the details of the violation. This letter stressed that if the infringing piece was not removed from Defendant The Marshall Project and all collaborating sites within 14 business days that Plaintiff would be filing suit against them in this Court. [See <u>Exhibit C</u>, pg. C-21 & C-21]

32. On July 24, 2016, Plaintiff received a response acknowledging receipt of the letter mentioned in paragraph 31, from Defendant Bill Keller. [See <u>Exhibit C</u>, pg. C-22]

<u>V. STATEMENT OF CLAIM</u>

<u>COPYRIGHT INFRINGEMENT</u>

33. Plaintiff Christopher Dankovich realleges and incorporates

by reference his allegations in paragraphs 1 through 33 as if fully restated herein.

34. **Defendant Bill Keller**, as chief editor and decision-maker for Defendant The Marshall Project, intentionally violated Plaintiff's rights and United States federal law 17 USCS §204(a), and by doing so infringed upon Plaintiff's copyright of his original written work, THE RIVING. The law in question states: "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is **in writing** and **signed** by the owner of the rights conveyed or such owner's duly authorized agent." [all emphasis added] Defendants never received written or signed permission to use Plaintiff's writing. For further details, please refer to Plaintiff's accompanying brief.

35. The only available defense to not possessing a signed transfer of copyright from the copyright's original owner is the judicially created concept of an implied transfer of nonexclusive license. Regardless of whether Plaintiff submitted his copyrighted work, THE RIVING, to Defendant Eli Hager and Defendant The Marshall Project for possible publication, any implied license would have been for the publishing of THE RIVING **as it was submitted,** or as "THE RIVING Version 2" which Defendant Hager stated as being the "final edit." Even if an implied license could be assumed for Defendant The Marshall Project to publish THE RIVING as it was, or as Version 2, this implied license does not give Defendants the right to use Plaintiff's copyrighted work in any way they desire. It does not give license to use the writing in any other work. The scope of any implied license that could be theoretically formulated was undoubtably exceeded. The exceeding of any license that could be theoretically inferred is represented by Plaintiff's shock and his comments and dialogue between Plaintiff and Defendant Hager after May 30, 2016. Plaintiff immediately contacted Defendant Hager and said: "The final edited version you sent me (which I still have a record of) and which I agreed to was NOT the final version that

-9-

was published [...]", and, "I did not write the piece that was published."[See Exhibit C, pg. C-9]

On July 12, 2016, in Defendant's email to Plaintiff, Defendant Hager admits that there never was an implication made, or agreement to use, Plaintiff's work for anything other than the exact form which he had submitted or approved: "I take personal responsibility for not making it clear to you that the headline would be whatever the editors decided they wanted it to be [...]."[See Exhibit C, pg. C-19]

As for certain other changes, some of which involve the adulterating of factual details in the piece, Defendant Hager states: "As for the other points you made [....] Those changes were made by the fact-checker."[See Exhibit C, pg. C-10]

Defendants never made any indication, nor ever asked for any permission, nor did Plaintiff ever in any way imply permission, for Defendants to use his work in any way other than exactly how it was submitted.

36. The lack of communication by Defendants about changes, editing, or publication between May 4, 2016 and May 31, 2016 (despite regular communication before that) represents **intent** to defraud Plaintiff, violate his trust, and infringe on his federally-protected rights.

37. The changes made to Plaintiff's writing, particularly the title, without his permission, represent what is known as "yellow-journalism". The intent of publishing writing with such a name as "I'm Losing My Mind After Refusing to Plead Insanity for Murdering My Mom" is to lure readings into reading based solely on shock-value and horror. It is often considered to be a disreputable tactic, and as attributed to Plaintiff is damaging to Plaintiff as it portrays Plaintiff as someone seeking out infamy, and portrays Plaintiff as less than human. This was done intentionally to create shock to lure readers in. The intentionality is further demonstrated by Defendants fraudulently portraying the title as if it were a quote from the Plaintiff, which is discussed in the next

-10-

section, <u>VIOLATION OF THE LANTHAM ACT</u>.

38.**Defendant Bill Keller** misrepresented and attempted to mislead Plaintiff in his July 21, 2016 response to Plaintiff's Cease and Desist letter: "As we told you **during** the editing process and afterward, The Marshall Project, like most publications, has the discretion to edit work submitted to us and write headlines." [All emphasis added] **No such communication** ever took place before Defendants illegally published written work by, or attributed to, Plaintiff.

39.**Defendants John Doe**, Editor-in-Chief, and **VICE News** collaborated with Defendant Bill Keller, and Defendant The Marshall Project, to publish copyright-infringing work, further infringing upon the copyrights of Plaintiff.

40.  **Defendant Eli Hager** facilitated the copyright-infringement and violations of The Lantham Act perpetrated by his employer and boss, Defendants The Marshall Project and Bill Keller. However, Plaintiff is not seeking damages or reimbursement from Defendant Hager, as Defendant Eli Hager was taking orders, and upon notice from Plaintiff attempted to facilitate remedies for the infringement on behalf of Defendants Keller and The Marshall Project. Plaintiff only seeks applicable injunctions and orders against Defendant Eli Hager.

<u>VIOLATION OF THE LANTHAM ACT</u>

41.  Plaintiff Christopher Dankovich realleges and incorporates by reference his allegations in paragraphs 1 through 40 as if fully restated herein.

42.  **Defendants Bill Keller, The Marshall Project, John Doe, and VICE News** conspired to violate THE LANTHAM ACT, <u>15 USCS §1125</u>, by, after infringing on Plaintiff's copyright, adding the words "I'm Losing My Mind After Refusing to Plead Insanity for Murdering

My Mom" to the story as the title. It would be completely unreasonable and implausible to claim that this title is not represented as the Plaintiff's own words and statement in a de facto manner. Defendant Eli Hager admits in his May 31, 2016 [Exhibit C, pg. C-10] email to Plaintiff that Plaintiff did not write the headline title portrayed as having been written or otherwise uttered by him: "We send these essays to Vice News, and they create the headlines."

43. Numerous other changes were made to Plaintiff's original writing THE RIVING without Plaintiff's permission or approval, including the complete rewriting of details in the story to make them unfactual, and are directly portrayed as having been written by Plaintiff. These changes have the effect of portraying Plaintiff as a liar in connection to his previously published work, breaking the continuity of his recording of facts central to his life, while also portraying him in a more negative light. Please see Plaintiff's accompanying brief and Exhibit B. Specific changes include stating that Plaintiff was placed in the "Psychological Hole" to protect him from himself (he was placed there because he was too young to be in general population at age 16, and there was no other room for him after his original placement, the medical unit, was needed), the changing of Plaintiff's specific pleadings in his criminal case, the specific date on which Plaintiff was admitted to the hospital for injuries sustained from a beating from his mother (which damages possible sympathetic reactions from others, as ending up in the hospital for such a beating on one's birthday is different than "around" one's birthday), the deletion of Plaintiff's statement about being forced to live in a house with his attempted molester (which is crucial to understanding the nature of Plaintiff's criminal history), along with other, style changes.

Defendant Eli Hager acknowledges that these alterations, though attributed to Plaintiff, were not made by Plaintiff: "As for those other points you made [. .] Those changes were made by the fact-checker." [See Exhibit C, pg. C-10]  Plaintiff never gave any

Defendants permission to change his writing or details in it.

44. Despite **Defendant Bill Keller**'s assertion in his personal letter to Plaintiff [Exhibit C, pg. C-22], that "[...] The Marshall Project, like most publications, has the discretion to edit work submitted to us and to write headlines," **Defendants do not retain the right to violate federal law.** Regardless of the fraudulent statement made in this letter by Defendant Keller that "[...] we told you **during the editing process** [... that] The Marshall Project [...] has the discretion to edit work submitted to us and to write headlines" [all emphasis added] (even though no such communication ever took place) Defendants do not have the right to arbitrarily attribute writing, particularly inflammatory and infamous statements, to Plaintiff without permission. The copyright issue being a separate claim, attaching a shocking and inflammatory statement to Plaintiff's writing and presenting it as if it were Plaintiff's own words is not justifiable simply because Defendants attach it to an already adulterated version of Plaintiff's actual writings.

The presentation of these words as the primary draw for the writing, and in much larger format and as the opening line, causes what would otherwise be a merely offending violation into an egregious damage to Plaintiff.

45. On the rest of the Defendants' websites where Plaintiff's name is shown, it is only in connection with the statement "I'm Losing My Mind After Refusing to Plead Insanity for Murdering My Mom", which is falsely attributed to him. While it may be a link to Plaintiff's copyright-infringed work, many readers and visitors to the website will only see this statement in connection with Plaintiff's name, without anything else of Plaintiff's writing to "dilute" the statement. Here, it is a pure Lantham violation, where Plaintiff's name is presented only with "a false or misleading misrepresentation of fact, which --(A) is likely to cause confusion, or to cause mistake, or to deceive as to the [...] origin, sponsorship, or approval of his or her goods [...]." [15

USCS §1125]

## DEFENDANTS ACTIONS HAVE CAUSED
## IRREPARABLE INJURY TO PLAINTIFF

46. As a result of Defendants violation of Plaintiff's copyrights and the publishing of inflammatory writing attributed to Plaintiff which Plaintiff did not write, Plaintiff Christopher Dankovich has suffered not only infringement to his copyrights, but also irreparable injury to his reputation for honesty, integrity, and responsibility as a writer. Plaintiff has suffered damage to his personal relationships with friends and family members as a result of Defendants' actions. Defendant lost the legal assistance of a reputable lawyer working pro bono for him, partly as a result of Defendants' actions. Most damaging, however, is the irreparable injury of Plaintiff's reputation, along with loss of freedom this violation poses as it threatens Plaintiff's future appeals and clemency by portraying Plaintiff as someone seeking infamy for his criminal actions, portraying him in a negative light, and by presenting information contrary to Plaintiff's history, previous claims, and facts established in another court (having the effect of presenting Plaintiff as untrustworthy, contradictory, and a liar in regards to his own past).

## VI. REQUEST FOR RELIEF

47. **WHEREFORE,** Plaintiff Christopher Dankovich requests this Honorable Court to issue an immediate preliminary injunction compelling Defendants to stop the publication and public display of any and all writings by Plaintiff Christopher Dankovich, as well as any writings attributed fraudulently to Plaintiff Christopher Dankovich in order to prevent further irreparable injury that continues every day that Defendants infringe on Plaintiff's rights, as well as to remove the infringing documents from their websites and to restrain further infringement of Plaintiff's copyright and

-14-

prevent the dilution by blurring and tarnishment of his name, as provided for in 17 USCS §502(a), 15 USCS §1125(c), and the Federal Rules of Civil Procedure Rule 65(a).

48. Plaintiff requests that this Honorable Court issue an order declaring that Defendants have acted in violation of United States federal law.

49. Plaintiff requests this Honorable Court to issue an injunction compelling Defendants to publicly apologize for their infringement and fraudulent attributions on their same websites that published the violating material.

50. Plaintiff requests five dollars ($5.00) for every member of the public counted as viewing the infringing material on Defendants' websites as compensatory damages.

51. Plaintiff requests any profits of the infringer that are attributable to the infringement (i.e. from advertising revenue received per page view, and for page views to other areas of Defendants' websites brought in by Plaintiff's infringed work), which Plaintiff is entitled to per 17 USCS §504(b) (Actual Damages and Profits).

52. Plaintiff requests that Defendants reimburse Plaintiff for any and all court fees and costs incurred by Plaintiff, as well as pay any other applicable court fees incurred in general.

53. Plaintiff requests any additional relief as this Honorable Court may deem just and proper.

54. Plaintiff requests that this Honorable Court direct Defendants to reply and respond to this Complaint.

Respectfully Submitted,

_____

Christopher Dankovich, Plaintiff

-15-

I declare under penalty of perjury that the foregoing is true and correct.

Christopher Dankovich

8/15/16
Date

Notarized:

Subscribed and sworn before me, this 15th
day of August, 2016, a Notary Public
in and for _Lenawee_ County,
State of _Michigan_.

Anthony J. Velone
(Signature)
NOTARY PUBLIC
My Commission expires 08/26/2018

-16-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

Christopher Dankovich,

                Plaintiff,                   Civil Action No.

                    v.            _____

Bill Keller, Editor-in-Chief;

Eli Hager, Editor;

The Marshall Project;      Defendants

John Doe, Editor-in-Chief;

VICE News

                                     /

## BRIEF IN SUPPORT OF PLAINTIFF'S COMPLAINT

## TABLE OF CONTENTS

Table of Contents _____ i

Index of Authorities _____ ii

Concise Statement of Issue Presented _____ iv

Introduction _____ 1

Argument _____ 3

    I.) Defendants violated 17 USCS §204(a),
       and used writing by Plaintiff which they did
       not have the required written and signed
       permission to use. _____ 3

    II.) Defendants exceeded the scope of any
        theoretical implied license that could
        be assumed. _____ 3

    III.) Defendants violated 15 USCS §1125
        (The Lantham Act) by using Plaintiff's
        name in connection with false statements
        and attributing quotations, words, and
        false statements to Plaintiff. _____ 5

    IV.) Plaintiff was irreparably damaged by
        Defendants' Actions. _____ 7

Conclusion and Relief Requested _____ 9

## INDEX OF AUTHORITIES

**CASES**                                                                    **PAGE**

Davis v. E.I. DuPont de Nemours & Co.,
(240 F. Supp. 612; 1965 US Dist. LEXIS 9579;
145 U.S.P.Q. (BNA) 258)_____   6

Follett v. New Am. Library, Inc.,
(497 F. Supp. 304; 1980 US Dist. LEXIS 15533;
208 U.S.P.Q. (BNA) 597)_____ 6, 7

Gilliam v. ABC,
(538 F.2d 14; 1976 US App. LEXIS 8225;
192 U.S.P.Q. (BNA) 1_____   4

I.A.E., Inc. v. Shaver,
(74 F.3d 768; 1996 US App. LEXIS 537;
37 U.S.P.Q. 2d (BNA) 1436)_____   5

MacLean Assoc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.,
(952 F.2d 769; 1991 US App. LEXIS 30229;
21 U.S.P.Q. 2d (BNA) 1345)_____   5

Oddo v. Ries,
(743 F.2d 634; 1984 US App. LEXIS 21350;
222 U.S.P.Q. (BNA) 799)_____ 4, 5

Radio TV Espanola S.A. v. New World Entertainment, LTD.,
(183 F.3d 922; 1999 US App. LEXIS 16009)_____   3

## INDEX OF AUTHORITIES, Continued

**STATUTES**                                                             **PAGE**

15 USCS §1125 (THE LANTHAM ACT)_____2, 5, 6


17 USCS §204(a)_____     3


17 USCS §504(b)_____    10




**OTHER AUTHORITIES**                                                    **PAGE**

Webster's New Basic Dictionary, 2007 Edition_____    6

## Concise Statement of Issue Presented

As Editor-in-Chief and editor, respectively, of **The Marshall Project**, **Bill Keller** and **Eli Hager** conspired and collaborated with the Editor-in-Chief (**John Doe**) of **VICE News** to violate federal copyright law and infringe upon Plaintiff's copyright of Plaintiff's original writing, "THE RIVING". Furthermore, having infringed upon Plaintiff's copyrighted writing by using it in a means in which Plaintiff never granted permission, Defendants collaborated and conspired to violate The Lantham Act by attributing inflammatory statements to Plaintiff, which Plaintiff has never written or uttered, and by adding fabrications of unfactual information to Plaintiff's already copyright-infringed writing, damaging Plaintiff's reputation in the process. In addition, Defendants present only such falsified statements fraudulently attributed to Plaintiff attached to Plaintiff's name on their websites. These violations have damaged Plaintiff's copyright rights and his right to not have infamous statements and lies attributed to him, his personal relationships, and have and continue to irreparably damage his reputation, his credibility, his receiving of assistance, and opportunities for freedom.

# I. INTRODUCTION

Plaintiff Christopher Dankovich is a writer in addition to being an incarcerated state prisoner in Michigan. Despite being incarcerated, prisoners retain the majority of their First Amendment rights to freedom of speech and of the press. Plaintiff began writing a few years ago as a way to help relieve stress in his life, aggravated by his incarceration, to express powerful emotional issues caused by abuse that he had an inability to express at a young age, and to honestly deal with the nature of his criminal history in a way that was both honest, precise, and hopefully helpful and informative to others. Having been published by The Harvard Education Review, The Periphery Magazine, and FENCE Magazine, and having won awards from PEN America, PrisonWriters.com, and Vidahlia Press, Plaintiff chose to communicate with Defendant The Marshall Project and one of their editors, Defendant Eli Hager, about possible interest in The Marshall Project publishing Plaintiff's work.

After an initial rejection of another writing, Plaintiff submitted an essay about the psychological damage that solitary confinement can do to the mind of an adolescent, entitled THE RIVING, to Defendant Eli Hager. Defendant Hager responded positively to the piece, but asked for some additional details, which Plaintiff then provided. Defendant Hager then sent Plaintiff, for Plaintiff's review, an edited version of THE RIVING (herein called Version 2), which kept the same title and basic facts of the piece. In this communication, Defendant Hager referred to this as the "final edit."

On May 19, 2016, Defendant The Marshall Project, in collaboration with Defendant VICE News, published a writing on their websites, attributed to Plaintiff, that differed substantially from, but still kept many of the same aspects of, Plaintiff's original writing THE RIVING (and that of Version 2). Numerous changes were made to the style of the writing, but worst of all were the changing of specific facts written by Plaintiff, made by Defendants to be unfactual and false, along with the title

(presented as if it were a quote) "I'm Losing My Mind After Refusing to Plead Insanity for Murdering My Mom", all attributed to Plaintiff.

Defendants have infringed upon Plaintiff's copyright by using parts of his original copyright-protected writings without permission, and by going beyond the scope of any non-exclusive license that could be implied. Plaintiff submitted THE RIVING to Defendant Eli Hager to review for possible publishing as is. Plaintiff allowed for certain edits to create Version 2 of THE RIVING, but only after being informed of those edits and then choosing to specifically approve them. This is the extent of any license given to Defendants that could be implied from Plaintiff's actions; however, Defendants published a piece substantially different from either THE RIVING or THE RIVING Version 2.

Defendants also, by attaching unfactual details, false information, and words that are falsely presented as a de-facto quotation of Plaintiff to the already infringed writing, violated The Lantham Act 15 USCS §1125. See The Lantham Act, 15 USCS §1125(a)(1):

> "Any person who, on or in connection with any goods or services [...] uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation or origin, false or misleading description of fact [emphasis added], or false or misleading representation of fact, which --(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person -shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act."

Defendants actions have undoubtably presented changes, unfactual details, and words presented as quotations, and attributed them to Plaintiff.

This is not a case where facts could possibly be in dispute: all of Plaintiff's communications to Defendants are provided here to this Honorable Court in Exhibit C.

Plaintiff was, and continues to be, irreparably damaged by Defendants actions.

<u>ARGUMENT</u>

**I. DEFENDANTS VIOLATED <u>17 USCS §204(a)</u>, AND USED WRITING BY PLAINTIFF WHICH THEY DID NOT HAVE THE REQUIRED WRITTEN AND SIGNED PERMISSION TO USE.**

<u>17 USCS §204(a)</u> is a very clearly written statute: "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."

In <u>Radio TV Espanola S.A. v. New World Entertainment</u>, LTD, (183 F.3d 922; 1999 US App. LEXIS 16009), the court found that federal law grants an owner of copyrighted work the exclusive rights to publicly display the work, with transfer permitted by <u>17 USCS §204(a)</u>, provided that the instrument of conveyance is written and signed. "No magic words must be included in a document to satisfy §204(a). [...] Section 204(a)'s requirement is not unduly burdensome.... The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so." With similarity to this Complaint, the Court in <u>Radio TV Espanola S.A.</u> also stated: "A mere reference to a deal without any information about the deal itself fails to satisfy the simple requirements of §204(a). Without more, the comment in the [id Plaintiff's] fax is merely a part of negotiations rather than an instrument of conveyance or memorandum of transfer [internal quotations omitted]".

**II. DEFENDANTS EXCEEDED THE SCOPE OF ANY THEORETICAL IMPLIED LICENSE THAT COULD BE ASSUMED.**

Plaintiff submitted his original writing THE RIVING to Defendants Eli Hager and The Marshall Project for their review for possible publication as is. Defendants made no indication of

desire, nor made any comment regarding, nor asked permission to use Plaintiff's writing in any way other than it was submitted. Plaintiff gave no permission, nor gave Defendants any reason to believe, that Plaintiff would grant permission to use his work in any way other that how it was presented or how Plaintiff approved. Defendant Hager, in his email received by Plaintiff on May 4, 2016, presented small, specific alterations to THE RIVING to produce Version 2 of THE RIVING, which Plaintiff agreed to. Defendant Hager also presented these alterations as being the "final edit". Plaintiff takes the term "final edit" to mean that there will be no more editing done past those changes, which Plaintiff approved. Here, the title remained "THE RIVING."

Despite this, however, Defendant The Marshall Project, in collaboration with Defendant VICE News, published a substantially different, altered writing from THE RIVING, or Version 2 of THE RIVING, which still contained numerous similarities, as "I'm Losing My Mind After Refusing to Plead Insanity for Murdering My Mom." Story structure and writing style were changed, in addition to changes to factual details in order to make them fraudulent (see attached Exhibit B, detailing changes made, and false details added, without Plaintiff's permission or consent. Plaintiff also asks this Honorable Court to review the overall changes in wording and structure from what Plaintiff had actually written to what was published as an act of copyright infringement on its own).

A theoretical implied license to use Plaintiff's writing as it was submitted does not give Defendants permission or license to use parts and aspects of Plaintiff's writing in any way that Defendants choose to, or to incorporated it into another writing. See Gilliam v. ABC, 538 F.2d 14; 1976 US App. LEXIS 8225; 192 U.S.P.Q.(BNA) 1 ("One who obtains permission to use a copyrighted script in the production of a derivative work, however, may not exceed the specific purpose for which permission was granted."). In Oddo v. Ries (743 F.2d 634; 1984 US App. LEXIS 21350; 222 U.S.P.Q. (BNA) 799), the issue before the Federal Second District was similar to the issue here: "We conclude that [Plaintiff] Oddo, by preparing a manuscript based on his preexisting articles as part of his

-4-

partnership duties, impliedly gave the partnership license to use the articles insofar as they were incorporated in the manuscript, for without such a license, Oddo's contribution to the partnership venture would have been of minimal value. However, the implied license to use the articles in the manuscript does not give [Defendant] Ries or the partnership the right to use the articles in any work other than the manuscript itself. [...] Because the book is a work distinct from the manuscript, Ries exceeded the scope of the partnership's license."

Here, in this Complaint, the work published by Defendants, "I'm Losing My Mind After Refusing to Plead Insanity for Murdering My Mom", while based on aspects of Plaintiff's THE RIVING, is a work distinct from it. Plaintiff never gave permission, nor ever implied permission, to Defendants to use any of his copyright-protected writings in this distinct work, nor gave them permission to create or publish this distinct work.

Even if it can be assumed that Plaintiff gave nonexclusive license to Defendants to publish THE RIVING (though, per I.A.E., Inc. v. Shaver, 74 F.3d 768; 1996 US App. LEXIS 537; 37 U.S.P.Q. 2d (BNA) 1436: "[...] the existence of an implied license is an affirmative defense to infringement, the alleged infringers hav[ing] the burden of establishing an implied license."), MacLean Assoc. v. Wm. M. Mercer-Meidinger-Hansen, Inc. (952 F.2d 769; 1991 US App. LEXIS 30229; 21 U.S.P.Q. 2d (BNA) 1345) establishes that "The licensor can still bring suit for copyright infringement if the licensee's use goes beyond the scope of the nonexclusive license."

## III. DEFENDANTS VIOLATED 15 USCS §1125 (THE LANTHAM ACT) BY USING PLAINTIFF'S NAME IN CONNECTION WITH FALSE STATEMENTS AND ATTRIBUTING QUOTATIONS, WORDS, AND FALSE STATEMENTS TO PLAINTIFF.

On Defendants The Marshall Project and VICE News websites, the false statement "I'm Losing My Mind After Refusing To Plead Insanity for Murdering My Mom" is presented only in connection with Plaintiff Christopher Dankovich's name. This is presented as a

-5-

direct quote, as it is written in the first-person perspective (See Webster's New Basic Dictionary, 2007 Edition, page 270: "first person: n. The form of a verb or pronoun that designates a speaker or writer referring to himself or herself."). Defendants advertise this on their websites in direct violation of The Lantham Act:

> (a)(1) Any person who, on or in connection with any **goods** or services [...], uses in commerce any **word, term, name,** symbol, or device, or any combination thereof, or any **false designation of origin, false or misleading description of fact,** or false or misleading representation of fact, which --(A) is likely to cause confusion, or to cause mistake, **or to deceive as to the affiliation,** connection, or association of such person with another person, **or as to the origin, sponsorship, or approval of his or her goods,** services, or commercial activities by another person --shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act." [All emphasis added]

This same line, along with numerous other changes and alterations, were also added to Plaintiff's original, copyright-protected writing THE RIVING (which Defendants also used without permission). Regardless of copyright permission, however, Defendants violated The Lantham Act by falsely attributing false/misleading descriptions of fact and by presenting false designation of origin of words never uttered or communicated in any way by Plaintiff to Plaintiff's writing.

Even if such statements could be considered paraphrasing, "Paraphrasing is tantamount to copying in copyright law" (Davis v. E.I. DuPont de Nemours & Co., 240 F. Supp. 612; 1965 US Dist. LEXIS 9579; 145 U.S.P.Q. (BNA) 258), and Defendants did not have permission to use this in connection with Plaintiff's writing and to attribute it to his name. The issue here is not copyright, however. It is the blatant attributing of false statements and information to Plaintiff in connection with his writing. In order to establish a claim of false attribution or advertising under The Lantham Act, 15 USCS §1125, Section 43(a): "[T]he plaintiff must demonstrate that the statement in the challenged advertisement is false. Falsity may be established by proving that (1) the advertisement is literally false as a factual matter, or [...]. It is also well settled that in addition to proving falsity, the plaintiff must also show that the defendants misrepresented an

inherent quality or characteristic of the product" (**Follett v. New Am. Library, Inc.**, 497 F. Supp. 304; 1980 US Dist. LEXIS 15533; 208 U.S.P.Q. (BNA) 597; Internal quotations omitted). In comparison, Plaintiff's product here is his writing, and the misrepresented quality or characteristic being both statements and writing made by (or attributed to) Plaintiff, along with his factual consistency with his previously published writings in a continuous fashion, and reliability and accuracy overall.

-   Defendant Hager admitted that the title statement, along with the factual inaccuracies, even though attributed to Plaintiff, were not made or sanctioned by Plaintiff. Defendant Eli Hager's May 31, 2016 email to Plaintiff: "We send those essays to Vice News, and they create the headlines. [...] As for those other points you made [in reference to the changing of facts, such as when Plaintiff suffered a beating and spent time in the hospital, and the nature of Plaintiff's criminal pleadings] [....] Those were made by the fact-checker." Despite the odd name of "fact-checker" given to this referenced employee of Defendant The Marshall Project who supposedly added false information in connection with Plaintiff's writing, Defendants did not have any permission, nor any right without such, to add any such information, let alone false information, to Plaintiff's writing and portray it as if it had been written by Plaintiff.

## IV. PLAINTIFF WAS IRREPARABLY DAMAGED BY DEFENDANTS ACTIONS.

Plaintiff Christopher Dankovich is an incarcerated individual convicted through plea of two felonies he committed during what is otherwise considered legal infancy at the age of 15 years old. However, Plaintiff has spent the decade-plus he has been incarcerated growing up (literally and metaphorically). During that time, Plaintiff began writing about his experiences, and has earned a reputation not only as a talented writer (winning writing awards from PEN America, Vidahlia Press, and PrisonWriter.com, along with having been published by the Harvard Educational Review, FENCE Magazine, The Periphery Magazine, QUORA, and repeatedly by Minutes

Before Six and PrisonWriters.com), but also as an honest, reputable writer when it comes to discussing his past and experiences. Plaintiff strives to maintain a reputation for integrity; none of these extremely reputable organizations would agree to publish his writing if this was not so. Plaintiff maintains that even Defendant The Marshall Project would not have considered working with him initially if Plaintiff did not have a reputation for integrity.

Defendants actions have damaged, and continue to damage, Plaintiff's reputation for honest and integrity in his writing with every single day that has passed and will pass before Defendants remove their offending piece attributed to Plaintiff on their own, or at this Honorable Court's, volition. The false/misleading descriptions of fact (mentioned previously in this brief), not only are false and misleading (thereby portraying Plaintiff as a liar or manipulator), but they break the continuity of his statements in his other writings which establish his reputation. Defendants' actions have the effect, which Plaintiff communicated to Defendant Eli Hager, of portraying him as a liar and devious, or at the very least incompetent.

The title used for Plaintiff's writing (which Plaintiff contends that Defendants did not have the right to use in the first place) used by Defendants undoubtably calls out for the worst kind of attention. The main damage to Plaintiff, however, is that it is presented as a quotation. This attributes false statements to Plaintiff which he has never uttered and does not want attributed to him. Plaintiff takes responsibility for his past criminal actions, and though occasionally writes about them to help give background to larger concepts about the criminal justice system, has never once sought out attention for his mistakes. Portraying Plaintiff as someone who intentionally seeks out attention for his criminal past paints Plaintiff as deliberately seeking infamy, as unremorseful, uncaring, and desiring of notice being given to the worst mistakes of his past. This interferes with Plaintiff's ability to communicate his rehabilitation and redemption of the person whom Plaintiff is today.

Regarding words and statements attributed by Defendants to

Plaintiff, the mere act of misleading the public to perceive Plaintiff as saying something he has not is damaging in and of itself in its falsehood. It is obviously misleading to attribute statements to another person who did not make them. And anyone who reads Plaintiff's other published writings and compares them with the statements made in Defendants' published piece will certainly be confused, or perceive Plaintiff as confused.

Lastly, the mere infringement of Plaintiff's copyright damages Plaintiff, has damaged Plaintiff every day that it has been up, and will damage Plaintiff every day that it is publicly displayed, for the mere fact that it violates Plaintiff's federally protected rights. Defendants do not have the right, nor the license, to publicly display any of Plaintiff's writings.

## CONCLUSION AND RELIEF REQUESTED

Defendant Bill Keller (Editor-in-Chief) and Defendant Eli Hager (in his position as Editor), working on behalf of Defendant The Marshall Project, collaborated with Defendant John Doe (in his capacity as Editor-in-Chief) as representative of Defendant VICE News, and violated and infringed upon Plaintiff Christopher Dankovich's federally-protected copyrights, along with falsely attributing words and misleading descriptions of fact to Plaintiff in violation of The Lantham Act.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court issue an immediate preliminary injunction to stop the publication of writings by, and fraudulently attributed to, Plaintiff Christopher Dankovich, and to remove them from public display immediately in order to prevent further irreparable damages to Plaintiff. Plaintiff requests this Honorable Court issue an order declaring that the Defendants acted in violation of federal law. Plaintiff requests that this Honorable Court issue an injunction compelling Defendants to publicly apologize for their infringement and false attributions on their same websites that published the violating material in order to alleviate some of the damage and injury that Defendants' actions have caused Plaintiff.

Plaintiff requests that this Honorable Court award him compensatory damages of five dollars ($5.00) for every member of the public counted as viewing the infringing material on Defendants' websites. Plaintiff requests that this Honorable Court award him any profits of the infringer that are attributable to the infringement, which Plaintiff is entitled to per 17 USCS §504(b) ("Actual Damages and Profits"). Plaintiff requests that this Honorable Court order Defendants to reimburse Plaintiff for any court fees and costs incurred. Plaintiff requests this Honorable Court to grant any additional relief as the Court may deem just and proper.

Lastly, Plaintiff requests that this Honorable Court direct Defendants to reply and respond to this complaint.


Respectfully Submitted,


Christopher Dankovich, Plaintiff


I declare under penalty of perjury that the foregoing is true and correct.


Christopher Dankovich


8/17/16
Date


-10-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

---

**Christopher Dankovich,**

                Plaintiff;

                               **v.**

**Bill Keller,** Editor-in-Chief;
et. all

                Defendants

EXHIBIT

Civil Action No.

---

---

## **EXHIBIT A**

**(Plaintiff's Original Writing, THE RIVING)**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

---

**Christopher Dankovich,**
              Plaintiff;

                                        **v.**                          AFFIDAVIT

**Bill Keller**, Editor-in-Chief;
et. al
              Defendants

_____/

     Plaintiff Christopher James Dankovich, being duly sworn, deposes and says:

     "1. Pages A-1 through A-4 in <u>Exhibit A</u> represent THE RIVING as I submitted it to Eli Hager and The Marshall Project.

     2. Page A-5 of <u>Exhibit A</u> is the email, also found in <u>Exhibit C</u>, detailing the changes to the piece that I authorized Eli Hager to make."


     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Christopher Dankovich


8/15/16
Date

## THE RIVING
## By Christopher Dankovich

The room was white. The walls were white. The ceiling was white. The floor may have been white. The only object in the room, apart from the mattress on the floor (gray) was a stainless steel toilet, which in the light reflected white. And the light, the cold, biting fluorescent, shone strong and white and never dimmed, even at night. The goal seemed to be sterility, and the room looked to be unless you looked closer.

Opposite the toilet, the entrance to the long, narrow room was almost all glass, which looked out upon a grand, horseshoe-shaped hall, just as white and just as barren. Out there the walls were white, and the ceiling was white as well. The lights were the same artificial white. And that light was amplified by the "bubble" of mirrorized glass, the bubble which turned what would have been a square-shaped room into a U-shaped one, lined with mirrors that would allow them to see us, but us only ourselves. There was nothing else to see in this room of perpetual, artificial daylight, no actual daylight or means of knowing if the sun had yet risen or set. There were no clocks to tick away the seconds, minutes, hours; to allow you relation to others on that vital but often forgotten fourth dimension (no, not space, for we knew exactly where we were) --time-- the one thing that becomes most terrifying once you have enough of it.

It was as if the humanity had been bleached from the room. Apart from the delivery of meals --spaced equal distances apart--when I could ask the time, only shadows could keep me company. There, to the right, a message written on a window: "100% Jamaican," written in toothpaste and feces. But remnants of a human being's thoughts are not the same as having the actual person around. Though there, and sometimes I could see someone move, I was alone.

I was in the "Hole"; someone said it was the "Psychological Hole." As I sat there, sometimes thinking, sometimes staring at the wall, sometimes napping (because without knowledge of time passing

A-1

there can be no true sleep), I wondered whether it was called that because this was where they put people who were crazy, or where they put people to make them so. Was there a distinction? Did those charged with care for our safety and the safety of others care themselves?

What happens when you protect a man, or a boy, physically, but deprive him of everything that makes him who he is? I had shed my tears for the past year, since my arrest, but here, having been sentenced to what to a 15 year old is life, I could only feel anticipation for what was to come. For, from what I had heard about prison, with other people and the ability to walk around hanging out with friends if you make them and the razor inside your shaving razor if you don't, my life would be better than it was here. Or than it had ever been before.

Because here I was, just sentenced to longer than I had already lived in prison, despite having been diagnosed as mentally ill by multiple psychologists and as insane by one of the world's leading forensic psychologists. But if the court would have listened to him, I refused to (remember being 15 and being told that you were wrong when you didn't believe it so? Imagine being told that you, your brain, and your conception of reality and everything you know is wrong). So here I was, so crazy that I wouldn't plead crazy even though it meant that I would have been a free person sooner.

When you are alone, truly alone, with no other distractions, the only thing you can hear are the whispers of demons. Not real voices (well, sometimes you can almost actually hear them), but thoughts, ones that infect your mind, your sense of self, your sense of what is real. What you feel is determined by whether you listen (eventually, with no angel standing on your other shoulder, you will) and both your loyalty to and confidence in your previous interpretation of reality (and what you _feel_ is what matters, for who we are and what we do, while they may be influenced by objective factors, are ultimately determined by emotion and belief). A moment of doubt, of hesitation, an impression of betrayal, and you will travel down a road that forks into oblivion or infamy, melancholia or violence. For there is only so much a

A-2

mind can bear, particularly when what it has to bear is unlimited nothingness. The fear of falling is generally the fear of landing at the end of a great fall, but the one thing more frightening is the abyss that may never end.

Is it possible to make someone crazy? In such a short time, no, at least not permanently. I could feel it welling up, though. A hypersensitivity at first --I noticed the most subtle, alternating flickering of the white light, on a scale of one to ten, the difference between a 9.9 and 10-- as I struggled for input, lest my mind become solely occupied with what was inside. Patterns, faces, images appeared in the texture of the painted walls, next to minute stains that I hadn't noticed before, the origin of which I didn't want to consider. Then came broken thoughts followed by boredom followed by sleep. Then came the delirium, the kind you feel with a fever or in the middle of the night upon waking from a dream that didn't fully end, and you lay there trying to recapture it but instead your thoughts race and your heart races and you sweat and stay in that limbo of exhaustion and insomnia for hours. But this didn't end at daybreak.

As I lay there, blanket over my head, the pinpricks of light shining through the spaces between the threads (which, for a moment, I may have thought to be stars), or sat up staring at the wall, my hands, counting the bricks (how fast could I count them?), I imagined scenarios in my mind. There, outside my door's window, the girl I used to talk to back in school, asking how I'm doing, coming to check on me. I blink, close my eyes, and I see my judge again and this time I can say what I want to to him. There, at my friend's house, back in time (for fantasy exists outside its continuum), I pull him to the side and tell him to get rid of what he has that he shouldn't. Then, me, outside of myself, goes and tells my past to avoid what is about to happen that already has.

What if I could change things? What if I could go back to this moment or that, a month, a year, or five in the past? Every scenario played in my head, from the fight when I was seven to when I went to the hospital at eleven. But despite all the thoughts and prayers it is possible to make, the forces of nature and the tides

of time would not make an exception and change their direction just for me.

Despite differences in how, reality still does affect the mentally riven. The impotence of my mind to produce any physical results in my position in space or time (not that I would have expected it to, if you would have asked... I'm not crazy like that...) changed the direction and purpose of these waking dreams. Soon I merely imagined a companion, the comfort of whom anaesthetized my loneliness, my insecurities: a beautiful girl, with a face, a name that I could whisper as if she were actually there (like Wilson the volleyball in the movie <u>Castaway</u>). A woman (for masculine energy, even if it is pathological, needs its compliment), imagined to be there with me to talk to, to hold, to hold me. Never actually seen (not for real), she was felt as my blanket piled next to me, my arm around it, or pulled tight around me and against my back.

T

- - - - -

A-4

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA ID:201598640 [P 1/1]

You have received a **jpay** letter, the fastest way to get mail

From : CHRISTOPHER DANKOVICH, ID: 595904
To : Eli Hager, CustomerID: 13479316
Date : 4/17/2016 10:45:17 PM EST, Letter ID: 201598640 Parent Letter ID: 201064907
Location : TCF
Housing : CA082BOTA


Dear Eli,

Hey, thank you for taking the time to critique my submissions and for working with me. I totally understood and appreciated what you said for both of the pieces.

For THE RIVING, I was trying in the introduction to show how the isolation was almost intentionally set up like a sensory deprivation torture chamber with all the white, white, white. But I also get what you're saying about needing something to catch the reader's attention (if they don't read further, how will they get to "the good part"?). I also took in what you said about making it a little more personal. Yeah, some of the parts are hard to talk about, but I want to be a writer, and that's part of writing well. So here's what I was thinking:

Remove the first two paragraphs, and start with "It was as if the humanity had been bleached from the room." Just to show the surroundings, add immediately after "The little six-by-ten foot room was white, the walls were white, the floor was white, the lights were white and never dimmed."

At the end of that paragraph, begin a new paragraph and add: "I had just received a sentence of 25-to-37 years in prison hours earlier, having stood in the courtroom of a judge who had prodded me to change my plea of guilty of second-degree murder. Weeks earlier he had spoken that he respected the opinion of the doctor who had declared that I was insane, and therefore not criminally responsible, at the time of the crime I was pleading guilty to, something I was doing to avoid a trial I was not emotionally strong enough for at 15 years old. Earlier, the judge reaffirmed one final time that if I changed my plea agreement from what is essentially a lifetime in prison, there was a good chance I may only have to serve two or three years. I refused, and was removed from the courtroom to face the consequences of the two worst decisions of my life."

On what is right now paragraph 9, where I say: "I blink, close my eyes, and I see my judge again and this time I can say what I want to him", change the period to a comma and add: "some strange soulful combination of "fuck you" and "please help me." "

In the next paragraph, where I talk about the fight and going to the hospital, remove after "Every scenario played in my head." and add a period. After that, add:
"I thought of the fight when I was seven, at the private swim club where some kid I had never met before asked me if I wanted to fight, and then held my face below the water while I choked and flailed until a lifeguard pulled me up and kicked him out of the pool. I thought of when I went to the hospital on my eleventh birthday, after my mother (whose death I had just pleaded guilty to) sucker-punched me and threw me head-first into our living room's glass-and-wood coffee table. I thought of how the last year, when I had been incarcerated in the high-security building of the juvenile detention facility in my county, had been the best, and ironically the freest, year of my life, having spent the fifteen and a half years to the day before that forced to spend my time in a house with someone who had tried to molest me, my bedroom window nailed shut to keep me inside, barred from going outside to associate with the other kids in the neighborhood, prevented from having any but a small few over (though fewer wanted to come back after seeing the inside of our house). I had the knowledge now of how everything could have been different, too long after it became impossible to change a thing."

I don't exactly have the standard story about being or growing up in prison, so I hope that's okay. If you can think of anything else you'd like to see or see changed, please let me know. I'll send the addition for my dog piece in my next jPay (about to cut me off). Thanks again for taking the time to work with me. I know not all editors spend this much time working with someone who hasn't even been published by them yet.

A-5

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

Christopher Dankovich,

Plaintiff;

v.

Bill Keller, Editor-in-Chief;
et. all

Defendants

EXHIBIT

Civil Action No.

_____

/

**EXHIBIT B**

**(Copyright-Protected Materials Published by Defendants,
Written By, or Attributed to, Plaintiff)**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

---

**Christopher Dankovich,**
        Plaintiff;

                **v.**

**Bill Keller,** Editor-in-Chief;
et. all
        Defendants

---

                                       /

Plaintiff Christopher James Dankovich, being duly sworn, deposes and says:

"1. <u>Exhibit B</u> of my (Plaintiff's) Complaint is the writing that The Marshall Project and VICE News published without my written permission, and in a manner that exceeded any license I would ever imply or grant them to use my writing.

2. <u>Exhibit B</u> also demonstrates the infamous statements that Defendants attributed to me, false/misleading factual information that was changed from my correct version or made up completely though still attributed to me, and other changes made. I SUBMIT ALL FALSE/MISLEADING REPRESENTATIONS OF FACT, AND ALL FALSE STATEMENTS AND QUOTATIONS NOT WRITTEN BY ME, BUT ATTRIBUTED TO ME BY DEFENDANTS, IN HIGHLIGHTED COLOR."

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Christopher Dankovich

                                                Notarized:

9/13/16
Date

Opening Statement The best criminal justice news from around the web, delivered daily.

email@example.com

ILLUSTRATION BY TYLER BOSS

# I'm Losing My Mind After Refusing to Plead Insanity for Murdering My Mom

Solitary takes its toll.

*This article was published in collaboration with Vice.*

It was as if I had been bleached from the room.

My six-by-ten cell was white, the walls were white, the floor was white, and the lights were white but never dimmed. The only object in the room, apart from the mattress on the floor, was a stainless-steel toilet — which reflected the white light.

In the courtroom just hours earlier, on May 1, 2006, I'd received a sentence of 25 to 37 years in prison. The judge reminded me I could change my no-contest plea by claiming insanity.

I refused and was removed from the court.

Now I was in the "Pole," which someone had explained to me was the "Psychological Hole." It was a place for protecting me, physically, from myself. As I sat there — sometimes reflecting, sometimes just staring at the wall, sometimes napping — I began to wonder whether it got its name because it was where they put people who *were* crazy, or whether it's because this was the place they put people to *make* them crazy. Was there even a distinction?

Apart from when staff delivered meals, I never knew what time it was.

B-1

There, to the right, was a message written on a window: "100% Jamaican." It was scrawled in toothpaste and feces.

But even if the court had listened to the psychologists, I refused to. Try to imagine being 15 years old and being told that you, your brain, and your conception of reality (and everything you knew) was *wrong*. There I was, so crazy I wouldn't plead crazy.

When you are alone, truly alone, with no distractions, the only thing you can hear are the whispers of demons. Not real voices, but thoughts that infect your mind, your sense of self, your sense of what is real. What you hear is determined by whether you listen. There is only so much a mind can put up with, particularly when faced with unlimited nothingness.

Is it really possible to drive someone crazy? In such a short time, no, at least not permanently. I could feel it welling up, though. A hypersensitivity at first — I noticed the most subtle, alternating flickering of the white light (on a scale of one to ten, it was the difference between a 9.9 and 10). Patterns, faces, and images appeared in the texture of the walls next to small stains I hadn't noticed before, the origins of which I didn't want to consider.

As I lay there, blanket over my head, pinpricks of light shining through the threads, I imagined scenarios in my mind.

There was the girl I used to talk to back in school, who I imagined was coming to check in on me and see how I was doing. I imagined meeting my judge again, and this time I could say whatever I wanted to him — some combination of "fuck you" and "please help me."

**I imagined myself in the hospital, where I went ⸺ my 11th birthday, after my mother (to whose murder I had just pleaded no contest) sucker-punched me and threw me head-first into our living room's glass-and-wood coffee table.**

And I saw myself as I was a year earlier, when I had been incarcerated in the highest-security building of the juvenile detention facility. It was the best, and the freest, year of my life, having spent the previous 15-and-a-half years in a house with someone who kept my bedroom window nailed shut and barred me from going outside.

Soon I merely imagined a companion who anesthetized my loneliness: a beautiful girl with a face and a name I could whisper as if she were actually there. A person to talk to, to hold, to hold me.

In my solitude, alone and away from my mother and everyone else who could possibly listen or would possibly care, I muttered thoughts

B-2

Case 2:16-cv-13395-LJM-DRG ECF No. 1 filed 09/20/16 PageID.42 Page 42 of 74

to this girl. And I would imagine her responses, sometimes subtly mouthing the words I pretended she'd say.

*Chris Dankovich is a 26-year-old inmate at Thumb Correctional Facility in Lapeer, Michigan, where he is serving a 25-to-37-year sentence for a second-degree murder he committed when he was 15. He stabbed his mother 111 times.*




chris dankovich

Web    Images    Video    News    More    Anytime

Restricted to  https://www.themarshallproject.org

Also try:  chris dankovich michigan

**I'm Losing My Mind After Refusing to Plead...**
www.themarshallproject.org/2016/05/19/i-m-los...
I'm Losing My Mind After Refusing to Plead Insanity for Murdering My Mom ... **Chris Dankovich** is a
26-year-old inmate at Thumb Correctional Facility in Lapeer, ...

**Life Inside | The Marshall Project**
www.themarshallproject.org/tag/life-inside
Life Inside Perspectives from those who work and live in the criminal justice system. ... By Chris
Dankovich. Life Inside May 12. What I've Learned as a Jail Doctor.

Promotional Results For You

    **Free Download | Mozilla Firefox® Web Browser**
**www.mozilla.org**
Download Firefox - the faster, smarter, easier way to browse the web and all of Yahoo

Also try
chris dankovich michigan        chris dankovich current news

2 results

chris dankovich    

Yahoo    Help    Suggestions    Privacy    Terms    Advertise    Submit Your Site    Powered by Bing™

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

---

Christopher Dankovich,
                Plaintiff

                      v.

Bill Keller, Editor-in-Chief;
et. all
                Defendants

EXHIBIT

Civil Action No.

_____

---

## EXHIBIT C

**(Communications Between Plaintiff and Defendants)**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

Christopher Dankovich,                                    **Affidavit**
           Plaintiff,                          Civil Action No.

                        v.               _____

**Bill Keller**, Editor-in-Chief;
et. all
           Defendants

_____/

    Plaintiff Christopher James Dankovich, being duly sworn, deposes and says:

    "1. I have only communicated with Eli Hager and The Marshall Project twice, other than by the prison email system JPay, between January 2016 and July 16, 2016. Both were separate essays/stories I had written. The first, in or around February 2016, was a submission of a story that has nothing to do with this suit, which was entitled, "EVERYONE I KNOW GOES AWAY." The second communication was THE GIVING, which I mailed out approximately March 21, 2016.

    2. In neither of those communications, which took place through the US Postal Service mail, did I directly give permission to publish those pieces, and nowhere did I imply permission to publish any of my writing in any other form other than which it was submitted.

    3. The last communication I had with any of the Defendants named in this complaint was a letter telling The Marshall Project to Cease and Desist the publication of any writings attributed to me, and that if they did not remove works attributed to me that I did not give permission for them to publish, then I would file suit against them.

4. Apart from my communications with Defendants in the above named fashion, my sole and only interaction with any of the Defendants has been through the email system JPay.

5. I submit printed-off copies of every single electronic message through JPay which I have sent to Defendants applicable to my story/essay THE RIVING, this complaint and suit. I swear that this is a complete record of communications sent by me through the JPay email system to any of the Defendants. I also submit all communications from Defendants sent to me which I still possess.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Christopher Dankovich

Notarized:

_9/13/16_____
Date

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA ID:192785168 [P 1/1]

---

*You have received a **Jpay** letter, the fastest way to get mail*

From : CHRISTOPHER DANKOVICH, ID: 595904
To : Eli Hager, CustomerID: 13479316
Date : 3/7/2016 11:27:52 PM EST,   Letter ID: 192785168   Parent Letter ID: 191799887
Location : TCF
Housing : CA082BOTA


Dear Eli,

   Hey, sorry to hear my piece didn't make it. I appreciate the kind words you gave it though. I would definitely be happy to write something else...

   I like the idea about the institutionalization, becoming different over time from the other teens that are still on the youthful side. I have an idea of how to at least start the issue: something I thought about was that they recently started a dog program here where they bring in dogs in order for prisoners to train/rehabilitate them for adoption, and when I first saw one of the dogs (after 11 years without having seen one in person), I didn't recognize the animal. I knew it was a dog, per se, but it looked like a foreign creature, an alien, something I had never come in contact with like a strange African ferret or something at the zoo despite that I was a dog owner on the outside. I trained my dog on the outside, but when I went to pet one of the dogs here for the first time after so long, I actually felt a bit of fear (I'm around serial killers, gangsters, the toughest of the tough and I've never felt that feeling around them). When I pet the dog, I almost cried, and it all came rushing back. I was thinking I could use that as an intro to some of the other aspects of institutionalization.

   I did do a somewhat similar piece on growing up in prison that won an award on Prisonwriters.com. Unfortunately I used some of my best 'scenes' in that, and I don't want to repeat myself. I do have another piece that I've already written but never have published that is relatively on that subject, about going through solitary confinement while young and the immediate institutionalizing effects that it can have. If it's all right I was thinking that I'll work on your/your editor's idea, and send both when I mail it out.

   I'd appreciate it if you'd let me know if this idea sounds good or if you think I should change it before I get too far.. You explained the Marshall Project, and I think I understand what you're looking for, though unfortunately I can't just log on to the sight to see for myself. I hope I can write something that meets what you're looking for.

   --Dank

C-1

---

*Jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA ID:195731331 [P 1/1]

**You have received a _jpay_ letter, the fastest way to get mail**

From : CHRISTOPHER DANKOVICH, ID: 595904
To : Eli Hager, CustomerID: 13479316
Date : 3/21/2016 2:39:57 PM EST, Letter ID: 195731331
Location : TCF
Housing : CA082BOTA

Dear Eli,

Hey, I just wanted to let you know that I'm sending out the two stories I mentioned to you in a previous email. One, WALK THE DOG, is about being so institutionalized that the dogs that were brought in to be trained were completely unfamiliar, and THE RIVING, which is on a similar note about how quickly solitary confinement can institutionalize and mess with the mind of an adolescent. I attempted to work them together separately, or write something similar combining a few examples, but I had a hard time doing it well enough within the size limits to feel that it would be worthy of submitting. Let me know if you like either of them, or if you feel they could use any changing/adding/deleting.

Thanks Eli. Have a great week!

--Dank

C-2

_jpay_ Tell your friends and family to visit www.jpay.com to write letters and send money!

**You have received a *jpay* letter, the fastest way to get mail**

From   : CHRISTOPHER DANKOVICH, ID: 595904
To : Eli Hager, CustomerID: 13479316
Date : 4/5/2016 7:38:28 PM EST,   Letter ID: 198815492
Location : TCF
Housing : CA082BOTA

Dear Eli,

I just had the letter I sent with my submissions returned to me today, with a post office sticker saying that it wasn't deliverable as addressed. I was wondering if maybe somehow in the time between my last submission and this one the address I have for you got smudged or I accidently wrote it wrong. The address I have for you is:

The Marshall Project
ATTN: Eli Hager
250 W. 57th Street
Suite 2514
New York, NY 10107

Please let me know if I have this wrong. I apologize for the delay. Thanks Eli.

--Dank

C-3

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA ID:201064907 [P 1/1]

**You have received a _jpay_ letter, the fastest way to get mail**

From : Eli Hager, CustomerID: 13479316
To : CHRISTOPHER DANKOVICH, ID: 595904
Date : 4/14/2016 6:05:26 PM EST, Letter ID: 201064907 Parent Letter ID: 198815492
Location : TCF
Housing : CA082BOTA

Hey Dank, I just received your new submissions the other day. They're both great, and both have promise, so I'm not sure which one I should start with. So I guess I'll just go in order.

In the one about the dogs, I think the main thing that you need to do is do a better job of describing that moment, that feeling, as you're trying but failing to pet the dog. I know you're talking about a kind of institutionalization-feeling (because I've talked about this with you), but I'm not sure that readers will quite get what's wrong with you and why you won't just pet the dog (they'll probably think it's fear, which, as you say, it's not).

Would you be willing to rewrite that paragraph and send it to me here in Jpay?

As for the other piece, I think it has a tremendous amount of promise to be hugely powerful, but I wanted a little bit more.

1) I wanted a stronger opening. You always have such powerful first sentences (for example, in the other submission, I loved your opening of "When the prison I've grown up in..."). But I wasn't really captivated by the opening paragraph in this piece, about all the white walls and white, white, white. I get what you're trying to do, but I think you should try a more straightforward opening in which you say you're in the hole, and this is going to be a piece about borderline going crazy as a very young man.

Want to give that a try, and send it to me here on Jpay?

2) The one other thing I wanted was a little bit more specificity about YOU, your story, your childhood. That's not what this piece is about, but I liked the moments when you briefly mentioned memories from childhood, and I think you should expand on those a little bit. I think the pain and power of this piece will only expand if you make it as clear as possible that this is a 15-YEAR-OLD experiencing this, and if that 15-year-old, as he wastes time in this cell, is thinking back to certain powerful or difficult moments of his recent childhood. (Like why did you get in the fight, why did you go to the hospital, why would your life now be better than it had ever been before? It is possible that some of this may be tough stuff for you to write about — but you have to, because you're a writer.)

Anyway, does that make sense? Want to send me a few lines or paragraphs of specifics about your story that I can kind of weave into the piece?

Again, I hope that was not too much — I think both pieces are great. Just like last time, my higher-up editor will have the final say, so I don't want to make any promises. But I definitely CAN promise that if you keep working hard on these pieces and future submissions, you will definitely be published here.

Thanks Dank, and let me know if you have any questions.

Eli

C-4

**_jpay_ Tell your friends and family to visit www.jpay.com to write letters and send money!**

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA ID:201598640 [P 1/1]

---

You have received a **jpay** letter, the fastest way to get mail

---

From : CHRISTOPHER DANKOVICH, ID: 595904
To : Eli Hager, CustomerID: 13479316
Date : 4/17/2016 10:45:17 PM EST,    Letter ID: 201598640  Parent Letter ID: 201064907
Location : TCF
Housing : CA082BOTA

Dear Eli,

Hey, thank you for taking the time to critique my submissions and for working with me. I totally understood and appreciated what you said for both of the pieces.

For THE RIVING, I was trying in the introduction to show how the isolation was almost intentionally set up like a sensory deprivation torture chamber with all the white, white, white. But I also get what you're saying about needing something to catch the reader's attention (if they don't read further, how will they get to "the good part"?). I also took in what you said about making it a little more personal. Yeah, some of the parts are hard to talk about, but I want to be a writer, and that's part of writing well. So here's what I was thinking:

Remove the first two paragraphs, and start with "It was as if the humanity had been bleached from the room." Just to show the surroundings, add immediately after "The little six-by-ten foot room was white, the walls were white, the floor was white, the lights were white and never dimmed."

At the end of that paragraph, begin a new paragraph and add: "I had just received a sentence of 25-to-37 years in prison hours earlier, having stood in the courtroom of a judge who had prodded me to change my plea of guilty of second-degree murder. Weeks earlier he had spoken that he respected the opinion of the doctor who had declared that I was insane, and therefore not criminally responsible, at the time of the crime I was pleading guilty to, something I was doing to avoid a trial I was not emotionally strong enough for at 15 years old. Earlier, the judge reaffirmed one final time that if I changed my plea agreement from what is essentially a lifetime in prison, there was a good chance I may only have to serve two or three years. I refused, and was removed from the courtroom to face the consequences of the two worst decisions of my life."

On what is right now paragraph 9, where I say: "I blink, close my eyes, and I see my judge again and this time I can say what I want to him", change the period to a comma and add: "some strange soulfull combination of "fuck you" and "please help me." "

In the next paragraph, where I talk about the fight and going to the hospital, remove after "Every scenarion played in my head." and add a period. After that, add:
"I thought of the fight when I was seven, at the private swim club where some kid I had never met before asked me if I wanted to fight, and then held my face below the water while I choked and flailed until a lifeguard pulled me up and kicked him out of the pool. I thought of when I went to the hospital on my eleventh birthday, after my mother (whose death I had just pleaded guilty to) sucker-punched me and threw me head-first into our living room's glass-and-wood coffee table. I thought of how the last year, when I had been incarcerated in the high-security building of the juvenile detention facility in my county, had been the best, and ironically the freest, year of my life, having spent the fifteen and a half years to the day before that forced to spend my time in a house with someone who had tried to molest me, my bedroom window nailed shut to keep me inside, barred from going outside to associate with the other kids in the neighborhood, prevented from having any but a small few over (though fewer wanted to come back after seeing the inside of our house). I had the knowledge now of how everything could have been different, too long after it became impossible to change a thing."

I don't exactly have the standard story about being or growing up in prison, so I hope that's okay. If you can think of anything else you'd like to see or see changed, please let me know. I'll send the addition for my dog piece in my next jPay (about to cut me off). Thanks again for taking the time to work with me. I know not all editors spend this much time working with someone who hasn't even been published by them yet.

C-5

---

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA  ID:202017460  [P 1/1]

*You have received a* **jpay** *letter, the fastest way to get mail*

From   : CHRISTOPHER DANKOVICH, ID: 595904
To :  Eli Hager, CustomerID: 13479316
Date :  4/19/2016 11:25:25 PM EST,    Letter ID: 202017460  Parent Letter ID: 201064907
Location :  TCF
Housing :  CA082BOTA


Dear Eli,

Hey, sorry it took an extra day to get this to you... our machine wasn't working yesterday.

I also get what you were saying about the piece WALK THE DOG. I wanted to add something to make it more clear what was going through my head when I tried to pet the dog and couldn't.
Between the end of the paragraph that ends with "That once he got closer, he really wouldn't like me?" and the next sentence, where Rodriguez says, "Just let him lick your hand. He likes being petted behind the ear."
Add:
"It had been so long since I had any affectionate contact, real contact, since I had given any, to any living thing of any kind. In that moment, I didn't know how to deal with what I was feeling. Not of being scared of the dog. Not of being scared of the affection. The terror I felt in that moment was from being forced to acknowledge an absence I'd pretended every day to ignore, to harden myself against. Institutionalization isn't a result of the constraints the state puts on us. It's from the barriers we build up in ourselves, to protect ourselves, to pretend that nothing else really matters."

I been thinking about how to describe the feeling of institutionalization, and it's not easy to describe. As a reader, does the above make sense? I ran it over with a couple writer friends of mine, but they're in basically the same predicament as myself, and they said they thought I described it pretty well, but they're also biased. If you think that needs any work, please let me know.

Thanks again Eli.

--Dank

C-6

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA ID:205076333 [P 1/1]

| You have received a **jpay** letter, the fastest way to get mail |
|---|

From : CHRISTOPHER DANKOVICH, ID: 595904
To : Eli Hager, CustomerID: 13479316
Date : 5/3/2016 8:43:37 PM EST,   Letter ID: 205076333
Location : TCF
Housing : CA082BOTA


Dear Eli,

   Hey, haven't heard from you in awhile, though I know you're busy. Just wanted to apologize if my previous changes to the submissions I sent you weren't what you were looking for. I get it if they were a little TOO personal... I wanted to personalize it like you asked but I understand if I made it to the point where it wasn't relatable. If that is the case I'd like to do a rewrite, or a totally new submission if you'd prefer. I've appreciated you working with me so far, and I hope that you'd be willing to continue to work with me.
   Anyway, I thank you for the opportunities thus far, Eli.

--Dank

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA ID:205295442 [P 1/1]

## You have received a *jpay* letter, the fastest way to get mail

From : CHRISTOPHER DANKOVICH, ID: 595904
To : Eli Hager, CustomerID: 13479316
Date : 5/4/2016 7:31:08 PM EST,    Letter ID: 205295442
Location : TCF
Housing : CA082BOTA

Dear Eli,

Thanks for the great news! Sorry for the misunderstanding... sometimes these jPay emails get delivered within an hour of sending, others times I've had them take up to four days to get through.

The changes were perfectly fine, and I'm just glad that it kept the main feeling and sense of the story.

I'm honored that I got moved up to the head of the queue.

I'm grateful for the honorarium too. If you wouldn't mind, please send it to my father: James Dankovich/ 3330 Newgate Dr./ Troy, MI 48084.

Thanks again for taking the time to work with me. I have a lot of people excited to read the piece once it's published. I'm really excited myself.

Don't want to take up too much of your time, but thanks again Eli!

--Dank

C-8

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA ID:210459831 [P 1/1]

---

You have received a **jpay** letter, the fastest way to get mail

---

From : CHRISTOPHER DANKOVICH, ID: 595904
To : Eli Hager, CustomerID: 13479316
Date : 5/30/2016 9:49:15 PM EST,    Letter ID: 210459831
Location : TCF
Housing : CA082BOTA

Dear Eli,

Hey, let me start out by saying thank you for working with me and giving me a chance to write for The Marshall Project. A lot of people I know really respect The Marshall Project, and about 150 people I know that support me went to your website (most for the first time) to see it.

That being said, five of them snail-mailed me a copy of the published piece, and I have some issues with it that we need to find an acceptable remedy for.

The final edited version you sent me (which I still have a record of) and which I agreed to was NOT the final version that was published. Somewhere between those two, the piece was altered and made to tell a different story, and details were changed to become unfactual. I did not write the piece that was published. I may have only been published in a few places before, but I take pride in being accurate and factual in everything I write, and when I share my personal experiences it is to shed light on larger issues, like the incarceration or the solitary confinement of juveniles.

The headline is written as if it were a quotation from me. It is not something I wrote, nor said, nor is it taken from anything I've ever written. It is self-pitying, and while I may write about my case in an attempt to throw light on bigger issues, one thing I do not indulge in is self-pity. While I'm not mad that the title was changed, it is not acceptable that the change presented as if it were a direct quotation which I have never made.

I did NOT plead "No Contest" to my charges. While a true plea of "No Contest" may have made my story easier to tell, "No Contest" and "Guilty" are two entirely different legal pleadings. I pled Guilty, which is what -I- wrote, to the first deal offered me because I wasn't strong enough at 15 to fight in court. Anyone can look that up in court records, and if anyone does, it will appear as if I'm trying to mislead the public.

I did NOT go to the hospital after my mother sucker-punched me and threw me head-first into our living room's coffee table AROUND my 11th birthday. I was in the hospital ON my 11th birthday, which is what -I- had written, and which was in the edited version you sent me. While no police reports were filed over that incident, there is a hospital bill that gives the date. Most children charged as adults and treated as adults have been abused, and solitary just dredges this up in addition to being a continuation of it. While other kids got action figures for their eleventh birthdays, I got punched in the face by a former gymnast who supposedly loved me. It was my fault, mind you--I had the gall to talk back after she said I had bad taste in movies. Still, it happened at a specific point in time, and I shared that for a reason.

I wrote this piece to show how the criminal justice system treats children, and how solitary affects them. It was published as a sensationalist piece with factual errors and a message (with headline) of self-pity. While I may not be the best or most sympathetic writeer, I take what I write seriously , including accuracy, adn I write for a purpose and to make a difference. I've heard a lot of positive hings about The Marshall Project from others, and I would like to continue this relationship, but this piece you've published is not what I've written, nor is it what I approved, though it is being presented as such. It needs to either be removed from your, and all connecting, sites, or changed to what was agreed to (or a new version that WE agreed to).

C-9

---

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA ID:210591520 [P 1/1]

---

**You have received a _jpay_ letter, the fastest way to get mail**

---

From : Eli Hager, CustomerID: 13479316
To : CHRISTOPHER DANKOVICH, ID: 595904
Date : 5/31/2016 11:00:30 AM EST, Letter ID: 210591520 Parent Letter ID: 210459831
Location : TCF
Housing : CA082BOTA


Hey Dank, thanks so much for writing to me and I'm so sorry to hear that you're upset about the piece. It was not our goal at all to change the piece in ways you feel are inaccurate or unfair.

As for the headline, I completely understand where you're coming from. We send these essays over to Vice News, and they create the headlines, which can sometimes be a little bit sensationalist. They often write headlines in the first-person even if it's not a quote, because that makes the article feel very immediate; it's a pretty common thing, actually. They're basically trying to get a lot of readers, and it really works — I think almost 100,000 people have read your piece so far.

But I also think that all of those readers came away from the piece feeling and understanding exactly what you wanted them to feel and understand: how the criminal justice system, and solitary confinement specifically, impact children. Do you think that the essay as a whole didn't come off the way you wanted it to come off?

As for the other points you made, I definitely appreciate your interest in making sure everything is factually accurate. Those changes were made by the fact-checker, and I'm not exactly sure how all of that works.

I do know that she talked to your lawyer, who told us it was a no-contest plea, not a guilty plea. That's why the fact-checker changed that part of it, because she had spoken to your lawyer.

As for the part where it says "around" your birthday, I think that's just because she couldn't confirm that you were at the hospital "on" your birthday, so she just changed the wording to make it less exact. Do you think that's a big problem?

Again, I'm so sorry to hear that this was your reaction to the piece, and I completely understand your frustration with the headline. However, I'm hoping that other than these two factual problems, you were pleased with the piece overall, because I think it was tremendously powerful.

I'll ask the fact-checker about these two problems, but let me know in the meantime if there's anything else we should know.

Best,
Eli


C-10

---

_jpay_ Tell your friends and family to visit www.jpay.com to write letters and send money!

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA ID:210719315 [P 1/1]

## You have received a *jpay* letter, the fastest way to get mail

From : CHRISTOPHER DANKOVICH, ID: 595904
To : Eli Hager, CustomerID: 13479316
Date : 5/31/2016 11:20:52 PM EST, Letter ID: 210719315 Parent Letter ID: 210591520
Location : TCF
Housing : CA082BOTA

Dear Eli,

Thank you for getting back to me as quickly as you did. To be honest, after I sent the last jPay, I wasn't sure if I was going to get a timely response. Thank you for being as professional and courteous to me as YOU have been.

I wouldn't have written for you, or at least have allowed you to publish, this piece if I would have known that headline was going to be used. I wouldn't even have been mad if it would've been changed, or even said the same thing in third-person. The internet was awash with stories about me when I first was incarcerated because I was completely barred from the media, unknowing of what was being said and written. I may not have been able to handle it at that time even if I would've known, but regardless when I do speak about my case I am particular about what I say, about it being truthful, and I'm not okay with words being put in my mouth. Damage done though, I guess. On that same note, I have a problem with the very end where it says how many times I stabbed the person who tried to molest me as a kid. My case is already mentioned, both in the title (whether I was happy with it or not), and by myself in the piece. There was no reason for this, it did not add a single thing to help the reader understand the story. It had NOTHING to do with what I was writing. If I work with someone, it's about my writing. That wasn't, and it didn't need to be in the piece. Someone's interested in the crime-scene details can google it. It has no reason to be paired with my writing and adds nothing to the story or understanding behind it, and is not necessary to the basic nature of my case.

As for the factual details, I like that there is some professionalism in fact-checking, and I never have written a single thing that I have a problem with being fact checked. But my lawyer, who I almost filed suit against for ineffective assistance of council and violating my attorney-client privilege, is someone whom I haven't seen or talked to in a decade. I have all court documents and transcripts from my case. I have no problem with fact checking, but I should have been given the chance to back-up my facts instead of going to someone who has no reason to know or remember them.

The date I ended up in the hospital is important for the same reason as above, and because I do feel it's important to the story.

I've heard so much about The Marshall Project being good, and I guess that the damage is already done. I'd like to write for you in the future, but I need to at least know what exactly is going to be published if I do and if you accept it.

Thanks for your time Eli.

C-11

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA ID:210806829 [P 1/1]

*You have received a **jpay** letter, the fastest way to get mail*

From : Eli Hager, CustomerID: 13479316
To   : CHRISTOPHER DANKOVICH, ID: 595904
Date : 6/1/2016 10:35:31 AM EST,   Letter ID: 210806829  Parent Letter ID: 210719315
Location : TCF
Housing : CA082BOTA

Hey Dank, thanks again for your email. We're working on the part about pleading guilty — I have alerted the fact-checker about that, and she's going back to the records. She feels terrible if she got it wrong, and I apologize that that may have been what happened.

As for the headline and the description of the crime, I completely understand where you're coming from. I agree with you that the details (especially sensational details) about the murder are not relevant to the content of what you're writing about.

I think the editors here and at Vice News include this information for the sake of "full disclosure." Readers typically want to know why the person they're reading about is in prison, and (according to the editors) it would be misleading or evasive to try to avoid telling readers that information.

That's the idea, at least. I will meet with my editor here and have a discussion about this, because it's a problem I don't want to come up again with future writers. You guys are pouring your hearts into these essays, putting your stories out there in ways that you don't have to, and it does seem harmful to include the sensationalist stuff after the fact.

The main takeaway is that they want to get more readers for your essay — because it's a great, moving essay — so they made a headline that's very arresting. But I'll encourage them to think about the ways that that strategy is affecting our writers.

Thanks again, Dank, and I hope we can work together in the future!

Eli

C-12

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

**You have received a jpay letter, the fastest way to get mail**

From   : CHRISTOPHER DANKOVICH, ID: 595904
To : Eli Hager,  CustomerID: 13479316
Date : 6/2/2016 2:43:46 PM EST,    Letter ID: 211063038   Parent Letter ID: 210806829
Location :  TCF
Housing :  CA082BOTA

Dear Eli,

   Just a quick email to say thank you. I'm not really used to people taking the time you've taken, or taking the time to really listen to what I'm saying. Thank you for that, and I'd really like to work with you again in the future.

   Thanks again,
--Dank

jpay Tell your friends and family to visit www.jpay.com to write letters and send money!

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA ID:216313504 [P 1/1]

**You have received a *jpay* letter, the fastest way to get mail**

From : CHRISTOPHER DANKOVICH, ID: 595904
To : Eli Hager, CustomerID: 13479316
Date : 6/26/2016 1:27:41 PM EST, Letter ID: 216313504 Parent Letter ID: 210806829
Location : TCF
Housing : CA082BOTA

Dear Eli,

Hey, I was contacted by my lawyer who is helping me with both an appeal and a commutation about the article that you published last month. You know I wasn't happy with the changes made but let it go because I figured that the damage was done and I wanted to continue to work with you. My lawyer informed me in no uncertain terms that not only were the changes you guys made going to seriously endanger my future and freedom, but that she (who is working on my case pro bono) wouldn't have agreed to work with me if she knew that was the type of material that I wrote (she was under the impression at first that the title it was published under was written by me, and I had to explain to her the situation).

It's been a month, and you've been very corgial working with me from the beginning and throughout this issue. With all respect to the work you, Eli, have done for me, I have to ask you and insist that this article be taken down from both The Marshall Project and from all collaborating or affiliated sites. The changes your organization made to my piece without my consent, in particular the title which is presented as if it were my words, is a danger to my future, my freedom, and to getting support that is necessary to secure those. I hate that this may endanger any future work or collaboration between us, but it needs to be removed immediately.

I hope that you understand, and that this isn't personal against you. I'm sorry that it had to come to this, but it is very important that it is taken down.

Thank you Eli. I wish all things well to you personally.

--Chris "Dank" Dankovich

C-14

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From : Eli Hager, CustomerID: 13479316
To : CHRISTOPHER DANKOVICH, ID: 595904
Date : 6/27/2016 11:23:55 AM EST, Letter ID: 216464819 Parent Letter ID: 216313504
Location : TCF
Housing : CA082BOTA

Hey Dank, thanks for your email and I'm so sorry again to hear that your essay is negatively affecting your case. We can definitely work on changing the headline, but we would need to get some more information from you before taking down the piece entirely. Which parts of the essay exactly are causing problems, and why?

Again, I completely understand your frustration with the headline and can see how that might be damaging your prospects in court. We will definitely change the headline, especially if you give us some ideas for alternate headlines.

But the piece as a whole is very powerful and well-written and important, and we are proud of it. It's a powerful statement of your humanity, in our view, and it has affected thousands of readers. We have never taken down a piece before, and so we would really need to understand which parts of the piece are causing the damage and why.

Does that make sense? Thanks so much again for your patience, and I apologize personally for any legal problems this is causing you. As soon as you get back to me, I can go to my editors about the headline.

Best,
Eli

C-15

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From  : CHRISTOPHER DANKOVICH, ID: 595904
To : Eli Hager, CustomerID: 13479316
Date : 6/28/2016 11:24:10 AM EST,   Letter ID: 216862248  Parent Letter ID: 216464819
Location : TCF
Housing : CA082BOTA


Eli,

Thank you for getting back to me. The single largest thing causing problems for me is the headline. The other two big things that my lawyer mentioned, as well as what I've felt all along, are the inconsistancies in my plea and date at which I went to the hospital (this isn't just about this piece... I've written and have been published about these things before and it presents an incongruity in my writing that makes it appear as if I'm lying or hiding something, which I absolutely cannot have if I'm going to be successful in my appeal or my commutation request). Finally, I cannot have the unnecessary mention of what is essentially crime-scene information at the end of a piece that I am willingly writing. That has nothing to do with the charges of the crime, the situation of the crime, nor the crime itself or the understanding of this particular piece itself. I've made it a point to never, ever work with anyone who feels the need to publish this before, not only because it isn't necessary but because, as my lawyer put it as well, it makes it appear as if I support or intentionally allowed those facts, which puts me in danger of others assuming that I'm comfortable with that, making it seem as if I'm indifferent to that, which is the same in legal circumstances as lack of remorse. As I've said before, the crime I PLED guilty to was second-degree murder. That is my crime, and I mention in the piece who it was on. The unnecessary detail at the end does not change whether the crime was manslaughter (my original charge), second-degree, or first-degree. Anyone wanting to can look up the crime-scene details of my, or any case. I do not write for, nor can allow myself to be associated with, anyone or any group that puts that with my writing.

These are the three issues which my lawyer detailed to me as being endangering to my future. They're essentially the same as what I originally brought up to you, though my original thought was that this would just go away and I could move on from this experience. My attorney informed me that this isn't the case. While I'm not thrilled about some of the other editing points which I mentioned previously, those aren't necessarily damaging to me. I do need these issues resolved, or I do need the piece to be taken down.

You said that the piece could be altered. I don't want to be some asshole just demanding it be taken down if the issue can be resolved another way. If these issues, which I did not agree to originally (the title/headline, the plea and date of the hospital which I had correct in what I submitted and the final draft you sent me that I approved, and the mentioning of unnecessary details of the crime at the end) are resolved, I and my attorney would be satisfied. Otherwise, I do need it taken down.

I came up with some alternate titles that I am comfortable with and think that may suit your needs as well:
* Insanity, Isolation, and I.
* Sentenced to a Quarter-Century at 15, Longer than I've Been Alive
* Criminal at 15, Sentenced to 25, Losing my Mind.
*

C-16

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA ID:216909313 [P 1/1]

## You have received a *jpay* letter, the fastest way to get mail

From : CHRISTOPHER DANKOVICH, ID: 595904
To : Eli Hager, CustomerID: 13479316
Date : 6/28/2016 3:17:37 PM EST, Letter ID: 216909313
Location : TCF
Housing : CA082BOTA

Dear Eli,

Sorry that the last email just ended in the middle of a thought... I got cut off. I don't know if you'll end up getting the two emails in the same day, so if you haven't already responded to the last one, here were the other titles that I'd be comfortable with as a replacement:
* Juvenile's Journey Alone in Adult Justice, Solitary Confinement
* In the White Room with No Window, Not Even One Bolted Shut
* Drifting into Insanity, Reaching for No One There.

I'd also be comfortable with any combination of any of these. What I'm not comfortable with is the mention of the crime in the title or subtitle. I cannot have my writing piggy-back or use as advertisement of any criminal event, other than the writing itself explaining an issue I believe in. I'm also open to other ideas, as long as they don't mention the crime. I do need to know what the final version is this time before I accept it being published under my name.

I do appreciate you getting back to me. I did and still do feel completely blindsided by this whole situation, but thank you for working through it with me. Again, the aspects of the piece that I need changed are:
1.) The title/headline
2.) The factual aspects of the story that were altered to be different from both facts that are in the court record and in my previous writings
3.) The description of crime-scene details of the crime I'm incarcerated for which are unrelated to the actual charge and which are unnecessary to understanding of the piece.

The above changes were made to my piece without my permission and I did not write them, and would in no way have agreed to allow it to be published or even have worked with The Marshall Project or any other organization if I had known it would even have been considered that this would have been done. These changes as they stand are endangering my chances of both my upcoming appeal and commutation request. If any of these cannot be changed immediately, I need the entire piece to come down from The Marshall Project and all affiliated/collaborating sites. I need to be made aware what, if any, changes are ultimately made or as the piece is taken down.

Thank you, Eli, for the help you've given me, and for your personal consideration throughout this. Please again let me say that this is nothing personal against you, as you've been corgial since we first communicated and have at least been helpful throughout this aggrevation.

Thanks for your time.
--Chris "Dank" Dankovich

C-17

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

**You have received a jpay letter, the fastest way to get mail**

From : CHRISTOPHER DANKOVICH, ID: 595904
To : Eli Hager, CustomerID: 13479316
Date : 7/11/2016 3:08:10 PM EST,    Letter ID: 219540727   Parent Letter ID: 216464819
Location : TCF
Housing : CA082BOTA

Eli,

Hey, I'm checking on the status of the piece. I haven't heard anything in a couple weeks. My attorney is advising me to file a lawsuit against The Marshall Project for deceptive business practices with intent to defraud, contractual fraud, and plagiarism (for publishing under my name what I did not write nor agree to) if the piece is still up in its current form by July 20, 2016.

You've worked with me so far throughout this process, but every day that goes by is an additional danger to my future. The piece should never have been published as it is, and all I am asking is that it is removed. I am even willing to allow it to be changed to remove the parts that are egregiously bad instead, but I really don't have time to continue to wait without knowing what is going to happen. I need to know what is going on. I am politely asking The Marshall Project to do merely what should have been done to begin with and not force me to take it to the next step. Please let me know what is going on.

Thanks for your time and assistance.

--Chris Dankovich

C-18

**jpay Tell your friends and family to visit www.jpay.com to write letters and send money!**

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA ID:219699362 [P 1/1]

> You have received a **Jpay** letter, the fastest way to get mail

From : Eli Hager, CustomerID: 13479316
To    : CHRISTOPHER DANKOVICH, ID: 595904
Date : 7/12/2016 10:30:09 AM EST,    Letter ID: 219699362   Parent Letter ID: 219540727
Location : TCF
Housing : CA082BOTA

Hey Chris,

I'm so, so sorry that you haven't heard from me — I wrote you an email a few weeks ago, but it appears that you never received it? That has now happened to me a few times on Jpay; my apologies again.

I'll paste my original email below, but I want to say first that threatening us with a lawsuit is not right. As you'll see below, we already made the factual change in your article weeks ago.

Thanks for working with us on this, and let me know if you have further questions.

Best,
Eli


Hey Chris,

I'm so sorry that I've taken a few days to get back to you — I brought all of your concerns to my editors, as well as the editor at Vice News, and they have been deliberating about what to do.

We apologize sincerely for the factual error we introduced into your essay, in which we said you pleaded "no contest" when in fact you pleaded guilty. That error was made by a fact-checker who is now no longer working for us on our Life Inside pieces. She consulted your former lawyer, when instead we absolutely should have gone to the primary source documents from your case.

We have now fixed that error and added a correction the bottom of the piece.

However, my editors informed me that they will not be changing the headline or the information about your crime, even though they do understand your concerns. They said that headlines are always an editorial decision that writers never have involvement in, and that they can't make an exception in this case. They also said that they feel that the information about your crime is relevant to our journalistic goal of conveying the full facts of whatever we publish, and they will not be able to remove it.

I take personal responsibility for not making it clear to you that the headline would be whatever the editors decided they wanted it to be, and that the description of your crime would be as complete as they deemed necessary. Perhaps if I had made those things more clear to you, we could have avoided this.

I deeply respect you as a writer, and I am very impressed with the work you did on this piece and your other two submissions. It is my belief that this piece is very powerful in the ways you intended it to be powerful, and that your humanity is what's most evident in it, not your crime. It is also my hope that we might continue to work together, but I do understand that you may not want to anymore.

If you or your lawyer still have any fact-based concerns, please continue to raise them with me, and we will work to get them fixed as quickly as possible. However, again, unfortunately The Marshall Project is unable to change a headline or bio, or take down a piece entirely.

Best,
Eli

> **Jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

Legal Affairs
The Marshall Project
156 W. 56th Street
Suite 701
New York, NY 10019

July 17, 2016

## Cease and Desist the Publication
### of Materials Written by, or Purported to be Written by,
### Christopher Dankovich in Violation of Law.

Dear The Marshall Project Legal Representative,

The Marshall Project is in violation of Federal Law 17 USCS §204 (a), in regard to your unlawful publication of written materials by Christopher Dankovich.

At the beginning of May 2016, The Marshall Project editor **Eli Hager** discussed publication of a written essay entitled "The Riving", written by Christopher Dankovich, with Mr. Dankovich via email service "JPay." Mr. Hager and Mr. Dankovich corresponded through this system about The Marshall Project publishing this piece under The Marshall Project's "Life Inside" series. After an editing process, Mr. Hager emailed a changed version of the intellectual property in question, "The Riving" to Mr. Dankovich that was different from the original piece. Mr. Dankovich nominally consented to the editing process that produced Version 2. On or around May 19, 2016, The Marshall Project in collaboration with VICE Media, published an article substantially different from Version 2 (to which Mr. Dankovich had consented to editing), which was fraudulently published as "I'm Losing My Mind After Refusing to Plead Insanity for Murdering My Mom." This published piece [Version 3], differed significantly from anything to which Mr. Dankovich had even considered to approve for publication, and which portrayed Mr. Dankovich negatively and as inaccurate and inconsistent in his writings. [It should be noted that Mr. Dankovich and the JPay email system archives, without the ability to delete, all outgoing communications]

Mr. Dankovich did not give his consent for this third version, or give written and signed consent to publish any version of any writing, under his name. The use of his name and the aspects of the piece which he had written were published by The Marshall Project in violation of Mr. Dankovich's consent and in violation of United States Federal Law.

**Federal Copyright Law**, 17 USCS §204 (a): "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in **writing** and **signed** by the owner of the rights conveyed or such owner's duly authorized agent."[emphasis added]

The Marshall Project (and any and all collaborators including VICE Media) must immediately remove any and all documents and writings by, or purported to be by, Christopher Dankovich. The

Marshall Project, in violation of Federal Law, does not have any right to use or in any way publish or distribute this material. This includes the material fraudulently ascribed to Mr. Dankovich, illegally published as "I'm Losing My Mind After Refusing to Plead Insanity for Murdering My Mom." The Marshall Project has not received appropriate permission to publish material written by or purported to be written (which includes, per 17 USCS §103(a), "derivative works") by Christopher Dankovich, and does not have written and signed permission as required under Federal Law 17 USCS §204.

If The Marshall Project continues to publish and display the offending and illegal publication after fourteen (14) business days of the receipt of this letter, this letter serves as notice, per 17 USCS §501(b), that a lawsuit will be filed in the Eastern Michigan District Court against The Marshall Project, its editors, and all affiliated organizations illegally publishing Mr. Dankovich's copyright-protected work (Mr. Dankovich is currently researching whether The Marshall Project violated additional Federal or State laws in fraudulently publishing this piece, and reserves the right to file suit over this additional violations if the offending material is not taken down by the aforementioned date). Mr. Dankovich will be seeking damages.

Thank you for your assistance in this matter.

Christopher Dankovich
#595904
3225 John Conley Dr.
Lapeer, MI 48446


cc: file


C-21

**The Marshall Project**

July 21, 2016

Christopher Dankovich

#595904

3225 John Conley Drive

Lapeer, MI 48446

Dear Mr. Dankovich,

We have received your "cease and desist" demand.  As we told you during the editing process and afterwards, The Marshall Project, like most publications, has the discretion to edit work submitted to us and to write headlines. When we are convinced we have made factual errors, we correct them (as we did in this case regarding your plea.)

Respectfully,

Bill Keller

Editor-in-chief

The Marshall Project

C-22

themarshallproject.org

156 West 56th Street, Suite 701
New York, NY 10019

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

---

**Christopher Dankovich,**

            Plaintiff,

                **v.**

**Bill Keller,** Editor-in-Chief;
et. all

           Defendants

EXHIBIT
Civil Action No.

---

---

## EXHIBIT D

**(Affidavit from Plaintiff Regarding
Defendant Eli Hager's May 4, 2016 Email)**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

Christopher Dankovich,

              Plaintiff,

**Affidavit**

Civil Action No.

v.

Bill Keller, Editor-in-Chief;
et. all

              Defendants

/

Plaintiff Christopher James Dankovich, being duly sworn, deposes and says:

1. On May 4, 2015, I received an email over the prison electronic messaging service JPay, from Eli Hager (JPay Customer ID No. 13479246), editor at The Marshall Project. As part of dialogue between Mr. Hager and myself over The Marshall Project's potential publishing of my essay/story THE RIVING, Mr. Hager presented in the email an edited version of THE RIVING, which still maintained the title, basic story structure, and what I consider to be essential facts.

2. In this email, Mr. Hager presented these alterations as the final edit. I say this because I specifically remember him using the word "final" followed by (to the best of my knowledge) either the word "edit", "version", "edition", or "changes". Mr. Hager, despite the changes, still refered to this piece, my writing, as "THE RIVING".

3. Through no intention or fault of my own, this email message from Mr. Eli Hager was deleted off of my "Received" email list.

4. I attempted to retrieve this deleted message by contacting, through the "Support" feature, the JPay company about restoring

this email. The JPay company did not restore it to my personal account.

5. All of my outgoing emails (emails sent from me) are archived on my JPay account in chronological order. The JPay software used by me, as a prisoner, does not allow me to delete ANY of my outgoing messages.

6. To the best of my knowledge, Mr. Eli Hager should still possess this email, which would have been sent out on his end between April 31 and May 4, 2016."

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Christopher Dankovich

Notarized:

8/15/16
_____
Date

Subscribed and sworn before me, this 15th
day of _August_, _2016_, a Notary Public
in and for _Lapeer_ County,
State of _Michigan_.

_____
Anthony J. Valone
(Signature)
NOTARY PUBLIC
My Commission expires _08/26/2018_

CHRISTOPHER DANKOVICH 595904 TCF Lock:CA082BOTA  ID:226883074  [P 1/1]

**You have received a _JPay_ letter, the fastest way to get mail**

From : JPay Representative
To    : CHRISTOPHER DANKOVICH, ID: 595904
Date : 8/16/2016 3:57:11 PM EST,    Letter ID: 226883074   Parent Letter ID: 226129469
Location : TCF
Housing : CA082BOTA


Hello

Unfortunately we are unable to restore any deleted emails.

Kindest Regards,
JPay Media Support
Kim

---

From: CHRISTOPHER DANKOVICH 595904
Sent: Tuesday, August 16, 2016 3:57 PM
To: JPay Representative


Email - Receiving
    A couple months ago I had an email deleted, not through any action or intention of mine, from Eli Hager (the date the email was received by me was May 4, 2016). The contents of this email are about to be a major factor in a civil court action.

    Is there any way this email could be restored to my account? I believe it should still exist on Mr. Hager's end. If it cannot be restored, is there any way that you could at least give me the LetterID for it? I know specifically that it was at least received on my end on 5/4/2016. If not, can you at least tell me whether it exists anywhere on a JPay server so that I can have the Court supoena it?

    Thank you so much for your time and assistance. I really appreciate anything you can tell me.

Sincerely,
Chris Dankovich

_JPay_ Tell your friends and family to visit www.jpay.com to write letters and send money!



**PRIORITY MAIL**

UNITED STATES POSTAL SERVICE

SCANNED



$ 10.00

MAILED FROM ZIPCODE 48446

Mailing Envelope

Visit us at usps.com

**INTERNATIONAL RESTRICTIONS APPLY:**

Customs forms are required. Consult the
International Mail Manual (IMM) at pe.usps.gov
or ask a retail associate for details.

UNITED STATES
POSTAL SERVICE®

USPS TRACKING #



9114 9999 4431 3276 1991 61



RECEIVED

SEP 19 2016

CLERK'S OFFICE DETROIT

new case

U.S. MARSHALS

From:
Chris Drakovich #595904
Thumb Correctional Facility
3225 John Conley Dr.
Lapeer, MI 48446



RECEIVED

SEP 19 2016

CLERK'S OFFICE
DETROIT

To:/Destinataire:
CLERK OF THE COURT
UNITED STATES DISTRICT COURT
OFFICE OF THE CLERK
231 W. LAFAYETTE
5th FLOOR
DETROIT, MI 48226

Country of Destination: /Pays de destination:

PS00000000013

TYVEK® IS RECYCLABLE.

HDPE   ©2005, DUPONT AND TYVEK ARE TRADEMARKS OF DUPONT

JS 44   (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
DANKOVICH, CHRISTOPHER J.

**DEFENDANTS** KELLER, BILL; HAGER, ELI; THE MARSHALL PROJECT; DOE, JOHN-EDITOR IN CHIEF, VICE NEWS; VICE NEWS

**(b)** County of Residence of First Listed Plaintiff   LAPEER, MI
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   NEW YORK COUNTY, NY
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
—PLAINTIFF PRO SE—
#595904 THUMB CORR. FACILITY
3225 JOHN CONLEY DR.
LAPEER, MI 48446

Attorneys *(If Known)*
—NOT KNOWN—

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                         *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☒ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
17 USC § 501 ; 15 USC § 1125

Brief description of cause:
COPYRIGHT INFRINGEMENT; FRAUDULENT ATTRIBUTION OF FALSE FACTS AND STATEMENTS TO PLAINTIFF

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $** PRELIMINARY INJUNCTION; $500,000+

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY   N/A
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  9/13/16

SIGNATURE OF ATTORNEY OF RECORD
—PLAINTIFF PRO SE—

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____