UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER DANKOVICH,

    Plaintiff,

v.

BILL KELLER, ELI HAGER,
THE MARSHALL PROJECT,
JOHN DOE, and VICE NEWS,

    Defendants.

Case No. 16-13395
Honorable Laurie J. Michelson
Magistrate Judge David R. Grand

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART AS MOOT DEFENDANTS' MOTION TO DISMISS [20], DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER [17], AND AFFIRMING THE ORDER DENYING PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND [30, 32]**

Plaintiff Christopher Dankovich is currently incarcerated at the Thumb Correctional Facility in Lapeer, Michigan. (R. 1, PID 1.) He wrote an essay about his experience as a young prisoner in solitary confinement, which Defendants published online. (R. 1.) Dankovich took objection to a few revisions that were made to the published essay, most significantly the title. (*Id.*) These concerns form the basis of this suit.

The Court referred the case to Magistrate Judge David Grand for all pretrial matters. (R. 4.) The Magistrate Judge has issued a Report and Recommendation regarding Defendants' Motion to Dismiss and Plaintiff's Motion for Temporary Restraining Order ("Report") (R. 42). He recommends that the Court grant Defendants' Motion to Dismiss (R. 20) to the extent it seeks to dismiss Dankovich's Lanham Act claim. He further recommends, based on Dankovich's request, that the copyright-infringement claim be dismissed without prejudice. It follows that he recommends denying as moot Defendants' motion to dismiss that claim. It also follows that he

recommends denying Dankovich's Motion for Temporary Restraining Order (R. 17) for failing to demonstrate a likelihood of success on the merits. Additionally, Magistrate Judge Grand has entered an order denying Dankovich's Motion for Leave to Amend (R. 43) and Re-Submitted Motion for Leave to Amend (R. 32) ("Order"). (R. 43.)

Now before this Court is Dankovich's objections to both the Report and Order. (R. 44, 45.) He primarily argues that he should be granted leave to amend his complaint because he has met his pleading requirements for two state fraud claims and the Magistrate Judge did not properly analyze his Lanham Act claims. For the reasons set forth below, the Court overrules Dankovich's objections, affirms the Magistrate Judge's Order, and adopts his Report.

### I.

### A.

In January 2016, Dankovich began an email correspondence with Defendant Eli Hager, an editor at Defendant The Marshall Project, a non-profit news organization that focuses on the criminal justice system. (R. 1, PID 45; R. 42, PID 371.) As part of that correspondence, Dankovich shared a personal essay he wrote, entitled *The Riving*, which dealt with "how quickly solitary confinement can institutionalize and mess with the mind of an adolescent." (R.1, PID 48.) In response, Hager requested a few alterations and stated "[j]ust like last time, my higher-up editor will have the final say, so I don't want to make any promises. But I definitely CAN promise that if you keep working on these pieces and future submissions, you will definitely be published here." (R. 1, PID 50.) Dankovich responded to Hager's request for changes in an April 17, 2016 email. (R. 1, PID 51.) On May 4, 2016, Dankovich received another email from Hager. (R. 1, PID 4.) According to Dankovich, Hager stated in the email that the attached version was the final edit to the essay and that it had moved to the top of the queue for publication. (R. 1, PID 4.) Defendants

have produced the email and, contrary to Dankovich's memory, the email states that the attached version was "the latest" version, not the "final" version. (R. 20-1, PID 175.)

On or around May 19, 2016, The Marshall Project, in collaboration with Defendant VICE Media LLC, published Dankovich's essay under the title *I'm Losing My Mind after Refusing to Plead Insanity for Murdering My Mom*. (R.1, PID 5.) In addition to the change in title, Dankovich claims Defendants made other changes to the text of his essay, including that he pleaded no contest to the murder of his mother when he pleaded guilty, and that "around"—not "on" — his eleventh birthday he was taken to the hospital for physical abuse by his mother. (R.1, PID 11.)

On May 30, 2016, Dankovich emailed Hager about his objections to the essay and focused primarily on the title. (R. 1, PID 55.) In the email, he stated that he did not write the title, and yet it "is written as if it were a quotation from me." (*Id*.) Hager responded the next day that he was sorry Dankovich was upset by the piece, and explained that VICE Media writes the headlines and that oftentimes it is written in the first person even if it is not a quotation. (R. 1, PID 56.) Hager also stated that the factual issues Dankovich raised were changed by a fact-checker. (*Id*.) In a later email, Hager reported that the plea issue was corrected, and that the fact-checker made an error. (R. 1, PID 65.) Hager also stated that "I take personal responsibility for not making it clear to you that the headline would be whatever the editors decided they wanted it to be," but advised Defendants would not be changing the title. (*Id*.)

In July 2016, Dankovich sent a cease and desist letter to the Marshall Project regarding their alleged copyright infringement. (R. 1, PID 7, 66–67.)

**B.**

In September 2016, Dankovich filed this lawsuit. He alleged only copyright infringement and violations of the Lanham Act. (R. 1.) Approximately three months later, Dankovich filed a

3

Motion for Temporary Restraining Order. (R. 17.) About a month after, Defendants filed a Motion to Dismiss. (R. 20.) After responding to Defendants' Motion to Dismiss, Dankovich filed a Motion for Leave to Amend his Complaint, in which he sought to add a state fraud claim based upon the title of the essay. (R. 30, PID 263–264.) Dankovich subsequently filed a Re-Submitted Motion to Amend Complaint, with a proposed amendment attached. (R. 32.) The proposed amendment added a state fraud claim based upon Hager's alleged misrepresentations about which version of the essay would be published. (R. 32, PID 280–283.)

Magistrate Judge Grand issued an Order denying both requests to amend. (R. 43.) On the same day, he recommended granting in part Defendants' Motion to Dismiss and denying part of it as moot. (R. 42, PID 375.) He also recommended denying Plaintiff's Motion for a Temporary Restraining Order. (R. 42, PID 375.) Further, consistent with Dankovich's request (made in response to Defendants' Motion to Dismiss), the Magistrate Judge recommended that Dankovich's copyright infringement claim be dismissed without prejudice. (R. 42, PID 375.) Dankovich has objected to both rulings. (R. 44, 45.)

## II.

The Magistrate Judge's order on Dankovich's motion to amend resolved a nondispositive pretrial issue. *See Baker v. Peterson*, 67 F. App'x 308, 311 (6th Cir. 2003). Therefore, pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), the Court will uphold the order unless it is "clearly erroneous or contrary to law." *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). A factual finding is "'clearly erroneous' when, although there is evidence to support it, the reviewing court. . . is left with the definite and firm conviction that a mistake has been committed." *Hagaman v. Comm'r of Internal Revenue*, 958 F.2d 684, 690 (6th Cir. 1992) (citation omitted). A legal conclusion is "contrary to law 'when it fails to apply or misapplies

4

relevant statutes, case law, or rules of procedure.'" *Ford Motor Co. v. United States*, No. 08–12960, 2009 WL 2922875, at *1 (E.D. Mich. Sept. 9, 2009) (citation omitted).

As to the Report on the dispositive motions, this Court conducts a *de novo* review of those portions to which Dankovich has objected. 28 U.S.C. § 636(b); *Curtis*, *supra*. The Court need not perform a *de novo* review of the Report's findings that have not been objected to. *See Schaefer v. Modelski*, No. 13-CV-13669, 2014 WL 3573270, at *1 (E.D. Mich. July 21, 2014) ("Although a court must review timely objections to a Magistrate Judge's report and recommendation, a court may adopt, reject, or amend the portions of a report and recommendation to which no party properly objects." (citing Fed. R. Civ. P. 72(b)(3); *Thomas v. Arn*, 474 U.S. 140, 150 (1985))); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012) ("The Court is not obligated to review the portions of the report to which no objection was made." (citing *Arn*, 474 U.S. at 149–52)).

**III.**

**A.**

The Court will begin with Dankovich's three objections to the Magistrate Judge's Order denying leave to amend. (R. 43.)

A motion to amend the pleadings should be denied if the amendment would be futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). An amendment is considered futile if it would not withstand a motion to dismiss. *Veasley v. Federal Nat. Mortg. Ass'n*, 623 F. App'x 290, 297 (6th Cir. 2015) (citing *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005)). Dankovich must thus allege "enough facts to state a claim of relief that is plausible on its face." *Traverse Bay Area Int. Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As Dankovich is seeking to amend his complaint to add state fraud claims, he must plausibly plead:

> 1) that the defendant made a material representation; 2) that it was false; 3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; 4) that he made it with the intention that it should be acted upon by plaintiff; 5) that plaintiff acted in reliance upon it; and 6) that he thereby suffered injury.

*Brownell v. Garber*, 503 N.W.2d 81, 87 (Mich. Ct. App. 1993).

Dankovich's first objection is to a statement in footnote five of the Magistrate Judge's Order. (R. 45, PID 399.) The footnote appears in a section that discusses whether Dankovich adequately pled a fraud claim based on the title of the essay. (R. 43, PID 388.) The Magistrate Judge assumed for the sake of argument that Dankovich met the first three elements of a fraud claim. (*Id.*) The footnote, however, expressed doubts about this assumption, specifically whether Dankovich had adequately alleged the title's falsity. (*Id.*) Dankovich disagrees with the footnote, claiming that "while [Dankovich] did not allege the words [of the title] were untrue . . . [he] does state that the words, as applied to himself . . . are untrue." (R. 45, PID 399.)

While Dankovich may disagree with the Magistrate Judge's concern that the title was not a false representation, it does not render the Order, all or in part, "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a). Indeed, footnote five is not a ruling and had no bearing on the outcome of the Order. The Magistrate Judge dropped the footnote as an aside and proceeded by assuming that Dankovich *had* pled the first three elements of fraud. (R. 43, PID 388–389.) The Magistrate Judge's holding rested on the fact that Dankovich had not pled the rest of the elements e.g., detrimental reliance. Dankovich, however, does not object to that analysis. Thus, the Court overrules Dankovich's first objection.

6

Dankovich's second objection is to the Magistrate Judge's analysis of his state law fraud claim. (R. 45, PID 400.) This claim is based upon Hager's statements to Dankovich about the essay and that the version of the essay that Dankovich approved would be published. (*Id.*) The Magistrate Judge found that adding this claim would be futile for two reasons: none of Hager's statements contained the representation that Dankovich claims he relied upon, and Dankovich had not adequately alleged the statements to be false. (R. 43, PID 389–391.)

Dankovich objects to how the Magistrate Judge interpreted two of Hager's statements. (R. 45, PID 400.) Dankovich first claims that Hager's statement, "My editor just informed me that she liked your piece ('The Riving') so much that she's moving it to the top of our production queue," was a representation that *The Riving* was going to be published. (*Id.*) He further asserts that the representation was false because *The Riving* was not published—the published essay was edited in ways he did not approve. (*Id.*) Dankovich also claims that Hager's statement that "[a]ll of the different parts are still yours, but they've shifted around a lot of lines to make things pack more of a punch" is false because various pieces (including the title and the facts about the plea and hospitalization when he was eleven) were changed in the published version of the essay. (R. 45, PID 400–401.)

What Dankovich does not address in his objection, however, is the context in which these statements were made, which the Magistrate Judge used in determining whether Dankovich had pled sufficient facts to make out a plausible claim. Both of the statements Dankovich raised in his objection were in Hager's May 4, 2016 email. (R. 45, PID 400–401.) In this email, Hager communicates that they are going to publish Dankovich's piece (*The Riving*) that Friday, and that he attached "the latest" version of the essay because he wanted Dankovich to see the edits "since it's your piece" but that "this kind of editing happens with all of our pieces." (R. 20-1, PID 175.)

7

Reading the statement –"My editor just informed me that she liked your piece ('The Riving') so much that she's moving it to the top of our production queue" – in context with these other statements in the email, the Magistrate Judge found it was not a representation that the attached version was going to be published as-is. (R. 43, PID 390.) Relatedly, then, the statement "[a]ll of the different parts are still yours" was not a representation about the published version, just the latest attached version. (R. 43, PID 391.) The Magistrate Judge also did not find that any statements were false. (*Id*.) Instead, he found that Dankovich had just explained "how he *subjectively interpreted* Hager's emails as a representation of some unstated promise and how his subjective interpretation turned out to be wrong." (R. 43, PID 391.) The Magistrate Judge found that "[t]his is simply insufficient to state a claim for fraud." (*Id*.)

Dankovich's objection lies with how the Magistrate Judge interpreted what Hager said to Dankovich. Given the context in which these statements were made, the version of the essay attached to the email, and that the Magistrate Judge applied the correct standard pursuant to Rule 12(b)(6), the Court cannot find that all or part of the Order was "clearly erroneous" or "contrary to law." The Court therefore overrules Dankovich's second objection.

Dankovich's last objection is to the Magistrate Judge's conclusion in a footnote that, even assuming Hager's statements were false representations, Dankovich failed to adequately allege either that Hager knew the representations were false when he made them or that Hager made the representations "without any knowledge of their truth and as positive assertions." (R. 45, PID 401.) The Magistrate Judge found that Dankovich provided no factual basis for this assertion, therefore failing to state a viable claim. (R. 43, PID 391–392.)

Dankovich claims that Hager's own statements provide the factual basis, namely an email Hager sent Dankovich. (R. 45, PID 401–402.) In that email, Hager apologizes for the fact-

8

checker's error about the plea, and takes responsibility for not making it clear to Dankovich that the headline for the essay "would be whatever the editors decided they wanted it to be." (R. 1, PID 65.) Dankovich claims that, in acknowledging the fact-checker's error, Hager's earlier statements about his editor wanting to put his essay at the top of the queue were made with a reckless disregard for the truth (if not knowingly false) as Hager knew that a fact-checker could later make corrections to his essay, thus no longer making it Dankovich's piece. (R. 45, PID 402.)

This objection, like the first, is to another footnote in the Order that ultimately had no bearing on the Magistrate Judge's decision. The Magistrate Judge based his decision upon Dankovich's failure to adequately plead that Hager had made the material representations Dankovich claimed he did, and his failure to adequately show that those representations were false. (R. 43, PID 389–392.) While the footnote provided an alternate ground for holding that the claim was futile, it did not form the primary basis for the Magistrate Judge's decision. Dankovich's prior objection addressed that primary basis, which the Court just addressed.

Thus, finding no clear error, the Court AFFIRMS the Order Denying Plaintiff's Motion for Leave to Amend and Plaintiff's Re-Submitted Motion for Leave to Amend.

**B.**

The Court will review *de novo* Dankovich's objections to the Magistrate Judge's Report and Recommendation. (R. 42.) They pertain only to the Magistrate Judge's determination that Dankovich's Lanham Act claims should be dismissed pursuant to Rule 12(b)(6).

When, as here, a defendant moves to dismiss pursuant to Rule 12(b)(6), the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), governs. Under that standard, a court first culls legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The

inquiry then becomes whether the remaining assertions of fact "allow[] the court to draw the reasonable inference that the defendant is liable[.]" *Id.* at 678. Although this plausibility threshold is more than a "sheer possibility" that a defendant is liable, it is not a "'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Whether a plaintiff has presented enough factual matter to "'nudg[e]'" his claim "'across the line from conceivable to plausible'" is "a context-specific task" requiring this Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).

Pleadings filed by *pro se* litigants are held "to less stringent standards than formal pleadings drafted by lawyers." *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). But "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 713 (6th Cir. 2004) (quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)).

Neither of Dankovich's objections are models of clarity. His first objection appears to focus solely on footnote ten of the Report where the Magistrate Judge concludes that he attempted to raise a false-advertising claim for the first time in his Re-Submitted Motion for Leave to Amend. (R. 44, PID 394.) His second objection also appears to focus solely on the treatment of his false-advertising claim. (R. 44, PID 395 ("But the Court has neglected to respond to Plaintiff's claims that have nothing to do with authorship: rather, Defendants continue to advertise a completely false statement which Plaintiff has never written or uttered with Plaintiff's name online, advertisement which furthers The Marshall Project's business and political goals.").) He objects both to the Magistrate Judge's conclusion in footnote ten that, had Dankovich tried to add a false-advertising claim before filing his re-submitted motion, leave would have been denied as futile, and to the

10

Magistrate Judge's reliance on *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) to dismiss his non-authorship Lanham Act claim. (R. 44, PID 395.)

Taking his first objection, this Court cannot find that Dankovich pled a false-advertising claim in his Complaint. In support of his objection, Dankovich cites from his Complaint:

> On the rest of the Defendants' websites where the Plaintiff's name is shown, it is only in connection with this statement which is attributed to him. While it may be a link to Plaintiff's copyright-infringed work, many readers and visitors to the website will see only the words, 'I'm Losing My Mind After Refusing to Plead Insanity for Murdering My Mom', along with the Plaintiff's name, without anything else of Plaintiff's writing to 'dilute' the statement. Here it is a pure Lantham [sic] act violation [.]

(R. 44, PID 394.)

But this recitation cuts the last sentence short. In its entirety, the sentence reads: "Here, it is a pure Lantham [sic] violation, where Plaintiff's name is presented only with 'a false or misleading misrepresentation of fact, which -- *(A) is likely to cause confusion, or cause mistake, or to deceive as to the [...] origin, sponsorship, or approval of his or her goods* [.]'" (R. 1, PID 12 (emphasis added).) Because the Complaint specifically cites subsection (A), and quotes its language, this Court cannot find that Dankovich pled a false-advertising claim under subsection (B), even with a more liberal reading under a *pro se* standard. *See Martin*, 391 F.3d at 713 ("Liberal construction does not require a court to conjure allegations on a litigant's behalf.").

Relatedly, Dankovich's second objection takes issue with the Magistrate Judge's conclusion that, had Dankovich attempted to amend his complaint to raise a false-advertising claim, such a request would have been denied as futile. (R. 44, PID 394.)

To establish a false-advertising claim under § 1125(a)(1)(B), a plaintiff must show that (1) defendant has made false or misleading statements of fact concerning his own product or another's; (2) the statement actually deceives or tends to deceive a substantial portion of the intended

11

audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff. *Grubbs v. Sheakley Group Inc.*, 807 F.3d 785, 798 (6th Cir. 2015) (citing *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. Of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999)). The Sixth Circuit further defined "'commercial advertising or promotion' as: (1) commercial speech; (2) for the purpose of influencing customers to buy the defendant's goods or services; (3) that is disseminated either widely enough to the relevant purchasing public to constitute advertising or promotion within that industry or to a substantial portion of the plaintiff's or defendant's existing customer or client base." *Id.* at 801.

In his proposed amended complaint attached to his re-submitted motion to amend, Dankovich has not adequately pled the elements of a § 1125(a)(1)(B) claim. He alleges that

> On the rest of the Defendants' website where Plaintiff's name is shown, it is only in connection with the state [sic] "I'm Losing My Mind After Refusing to Plead Insanity for Murdering My Mom", which is falsely attributed to him in violation of the Lanham Act. This is advertising the false statement in connection with Plaintiff's business, which is accurate writing and journalism. Many readers and visitors to the website will only see this statement in connection with Plaintiff's name, without anything else of Plaintiff's writing to 'dilute' the statement.

(R. 32, PID 295.) This statement is again followed by a citation to § 1125(a)(1)(A) -- indicative that Plaintiff was not alleging a claim for false advertising or promotion under § 1125(a)(1)(B).

Additionally, while Dankovich does not attach exhibits to his proposed amended complaint, he refers to exhibits attached to his complaint. (R. 32, PID 295.) These attachments provide the following evidence which could be construed as relevant to his argument: a screenshot of a Yahoo search of his name, which includes links to his essay on The Marshall Project website (R. 1, PID 43); a screenshot of the published essay which lists his name at the end of the essay (R.

1, PID 40–42); and a May 31, 2016 email from Hager stating that almost 100,000 people had read the article (R. 1, PID 56.)

But Dankovich does not allege facts demonstrating that any false statements were made in commercial advertising or promotion. Nor does he allege facts (even assuming, at best, a claim of implied falsehood) showing that a "substantial portion" of the 100,000 people who read the essay were deceived by the title, other parts of the essay, or Defendants' attribution of the essay to him. *Grubbs*, 807 F.3d at 802. Nor has he pled facts indicating that anyone who visited Defendants' website made a "purchasing decision" due to the title of the essay, the publication of the essay, and its attribution to him. The Court agrees with the Magistrate Judge that, even taking all well-pled factual allegations as true, Dankovich's upset over the edits made to his essay do not state a claim for relief under a statute that "prohibits deceptive trade practices such as false advertising and trademark infringement." *See Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013).

Dankovich also objects to the Magistrate Judge's reliance on *Dastar Corp.* to dismiss his non-"authorship" Lanham Act claim. (R. 44, PID 395.) Dankovich claims that the Magistrate Judge mischaracterized all of his Lanham Act claims as "origin" claims pursuant to § 1125(a)(1)(A). (*Id*.) He says that "the Court has neglected to respond to Plaintiff's claims that have nothing to do with authorship: rather, Defendants continue to advertise a completely false statement which Plaintiff has never written or uttered with Plaintiff's name online, advertisement which furthers The Marshall project's business and political goals." (R. 44, PID 395.)

The Court overrules this objection. The Magistrate Judge did not mistake Dankovich's false-advertising claim as merely an "origin" claim pursuant to § 1125(a)(1)(A). To the contrary, the Magistrate Judge discussed and disposed of the false-advertising claim in footnote ten. (R. 42, PID 378.) And the Court has already overruled his objections to this footnote. As for the Magistrate

13

Judge's discussion of *Dastar*, that was only for the purpose of analyzing a claim to which Dankovich has not objected (that Defendants' falsely attributed the essay and title to him). (R. 42, PID 377.)

For the reasons set forth above, the Court OVERRULES Dankovich's objections (R. 44, 45) and AFFIRMS the Order Denying Plaintiff's Motion for Leave to Amend and Plaintiff's Re-Submitted Motion for Leave to Amend, (R. 43) and ADOPTS the Report and Recommendation to Grant in Part and Deny in Part as Moot Defendants' Motion to Dismiss, and to Deny Plaintiff's Motion for Temporary Restraining Order, (R. 42).

SO ORDERED.

Dated: September 15, 2017

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
U.S. DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 15, 2017.

s/Keisha Jackson  
Case Manager